Jane DOE, et al., Plaintiffs-Appellants,

v.

Seth STAPLES, et al., Defendants-Appellees.

No. 81-3549.

United States Court of Appeals, Sixth Circuit.

Sept. 14, 1983.

Certiorari Denied Feb. 21, 1984. See 104 S.Ct. 1301.

**954**

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and HORTON, District Judge.*

## ORDER DENYING PETITION FOR REHEARING

The appellants filed a petition for a rehearing in this case on June 3, 1983. Two arguments are made in support of the petition.

1) The "lenient" judicial review as applied by this Court to the challenged statute, O.R.C. § 2151.01(C), appears to be in conflict with Supreme Court decisions in *Moore v. City of East Cleveland,* 431 U.S. 494 [97 S.Ct. 1932, 52 L.Ed.2d 531] (1977), and *Roe v. Wade,* 410 U.S. 113 [93 S.Ct. 705, 35 L.Ed.2d 147] (1973).

The cases of *Moore* and *Wade* are not applicable to *Doe v. Staples.* In *Moore,* the City of East Cleveland, Ohio, enacted an ordinance which limited the occupancy of a dwelling unit to members of a single family. That ordinance contained a definitional section which recognized as a family only a few categories of related persons. The ordinance prohibited Mrs. Moore from allowing one of her grandchildren to live with her. In addition, the ordinance subjected Mrs. Moore to a criminal penalty for its violation. She was actually convicted for violating the ordinance and sentenced to five days in jail and a $25 fine. Without labeling the level of scrutiny applied, the Supreme Court stated that "when the government intrudes on choices concerning family living arrangements, this Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation." 431 U.S. at 499, 97 S.Ct. at 1935. In finding the ordinance unconstitutional, the Supreme Court recognized the extended family as having historic roots deserving of constitutional recognition.

*Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), involved an attack upon the constitutionality of Texas criminal laws making procurement of abortion a crime unless necessary to save the life of the pregnant woman. Having found that, at least during the first trimester, a woman has a constitutionally protected right to terminate her pregnancy, the Court applied a compelling interest test to the abortion statute:

> Where certain 'fundamental rights' are involved, the Court has held that regulation limiting these rights may be justified only by a 'compelling state interest,' and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake. 410 U.S. at 155, 93 S.Ct. at 727. (citations omitted).

In the case at bar, *Doe v. Staples,* there was no assault by the state of Ohio upon family integrity. The state of Ohio, acting through the Hamilton County Welfare Department, had temporary legal custody of the child, Jane Doe, while the mother served a sentence in the Ohio Reformatory for Women. Following the mother's release, the state reunited Jane Doe with her mother, Mary Doe. As we pointed out in the opinion, the mother, Mary Doe, had a conditional liberty interest. The state of Ohio had a continuing interest in the welfare and safety of the child, Jane Doe. This continuing interest on the part of the state of Ohio arose out of its status as temporary legal custodian of the child. The interest of the mother in this case is not the same as the interest of the grandmother in *Moore* or the interest of Jane Roe in *Wade.* Consequently, the appellants cannot lift the

---

* The Honorable Odell Horton, U.S. District Judge for the Western District of Tennessee, sitting by designation.

level of constitutional scrutiny in this case to that of strict scrutiny as the appellants contend was applied in *Moore* or to that of compelling interest as was applied in *Wade.*

The appellants' second argument is stated as follows:

2) The finding of this Court that the welfare of the child removal standards contained in O.R.C. 2151.01(C) is constitutional, appears to be in contradiction to prior opinions of the Supreme Court as expressed in *Smith v. OFFER,* 431 U.S. 816 [97 S.Ct. 2094, 53 L.Ed.2d 14] (1977), and *Quilloin v. Walcott,* 434 U.S. 246 [98 S.Ct. 549, 54 L.Ed.2d 511] (1978).

Here the appellants again attack the welfare of the child/best interest standard of Ohio law as being vague and over broad and thus permitting the breakup of the natural family under circumstances the Supreme Court has characterized as repugnant to the due process clause of the Fourteenth Amendment. Appellants cite *Smith v. OFFER* and *Quilloin v. Walcott* as the legal support for their second argument.

*Smith v. OFFER* does not even address the "best interest of the child" standard. *Smith* involved the question of whether the procedures for removal of foster children from foster homes by ten day notice to the foster parents violated the due process and equal protection clauses of the Fourteenth Amendment. The Supreme Court therein held that the procedures afforded sufficient due process protection. *Smith* 431 U.S. at 856, 97 S.Ct. at 2115. The standard is alluded to only briefly in the concurring opinion and therein has reference to another issue, namely the avenue by which a foster parent acquires *any* rights. *Smith* at 861–63, 97 S.Ct. at 2118–119 (Stewart, J., concurring).

*Quilloin v. Walcott* involved the constitutionality of Georgia's adoption laws which denied an unwed father authority to prevent adoption of his illegitimate child. The U.S. Supreme Court held that a natural father's substantive due process rights were *not* violated by application of the "best interests of the child" standard in permitting adoption of an illegitimate child by the husband of the natural mother where the

natural father had never sought custody. *Quilloin* 434 U.S. at 254–55, 98 S.Ct. at 554.

The answer to this second argument by appellants is that Ohio was not attempting to break up a family. Neither of the cited cases stands for the proposition that a state, having retained legal temporary custody of a child after her mother was released from incarceration, may not later remove that child from her mother's physical custody "when necessary for [her] welfare or in the interest of public safety." Ohio had attempted to reunite a family after the mother served a prison sentence. At the time the State removed Jane Doe from her mother's care, temporary custody of the child was still in the state. Ohio was, as we stated in our opinion, a partner with the mother in the restoration of the family.

For these reasons, the Court reaffirms its opinion, 706 F.2d 985, in this case and denies appellants' petition for a rehearing.