While I concur with the majority on the third assignment of error, I must respectfully dissent from its resolution of the first and second assignments of error.
 Inapplicability of Waiver
The majority concludes that Goeller should have litigated his constitutional attack against Ohio's paternity statute, R.C. 3111.04, when genetic testing was ordered pursuant to R.C. 3111.03(B), and that his failure to do so constitutes a waiver on appeal. However, I am not convinced that the ordering of a test under one statute (R.C. 3111.03(B)) precludes a constitutional attack against another (R.C. 3111.04). The genetic test ordered pursuant to R.C. 3111.03(B) is a mere evidentiary predicate toward the ultimate resolution of all the issues encompassed by a parentage action under R.C. 3111.04. Such an action involves more than a finding of paternity, as a parentage action necessarily resolves questions of custody, support, visitation, and decision-making authority over issues such as a child's schooling. In the instant case, only paternity has been resolved, while the panoply of other issues are yet unresolved. Moreover, it is well settled that the application of waiver is a matter of discretion where the case involves plain error or the rights and interests involved warrant it. In re M.D. (1988),38 Ohio St.3d 149, at syllabus; Atkinson v. Grumman Ohio Corp. (1988),37 Ohio St.3d 80, 82. I conclude that this case warrants an exception from waiver.
Resolution of these issues under a parentage action attack brought by an interloper pursuant to R.C. 3111.04 will do further constitutional violence to Ben Goeller's right to an intact family. The harm against Goeller has not come and gone. The statute he is attacking as a violation of his constitutional rights, a parentage action under R.C. 3111.04, has not yet completed. In short, the issues are active, and the fate of the child Bryan is still unresolved. To impose a waiver in such a procedural state is incongruous with the fact of the ongoing parentage action under R.C. 3111.04.
 B. Constitutionality of Ohio's Paternity Statute
This case presents a matter of first impression before this Court. We are confronted with the question of whether the fundamental right to an intact family may be intruded upon by operation of Ohio's paternity statute, R.C. 3111.04. Goeller contends that Lorence has no standing to litigate paternity and parentage because R.C. 3111.04 is unconstitutional as applied against Goeller and his intact family.
 1. Standard of Review
Reviewing the constitutionality of a statute does not occur in a legal vacuum. Legislative enactments are afforded a strong presumption of constitutionality. State v. McDonald (1987), 31 Ohio St.3d 47, 48. Reasonable doubt regarding the constitutionality of a statute must be resolved in favor of the General Assembly's power to enact the law. Id. A statute may not be struck down as unconstitutional unless the claimant demonstrates that it is unconstitutional beyond a reasonable doubt. Statev. Thompkins (1996), 75 Ohio St.3d 558, 560.
 2. Applicable Statutes
Ohio's paternity statute is set forth at R.C. 3111.04(A), which provides:
 (A) An action to determine the existence or nonexistence of the father and child relationship may be brought by the child or the child's personal representative, the child's mother or her personal representative, a man alleged or alleging himself to be the child's father, the child support enforcement agency of the county in which the child resides if the child's mother is a recipient of public assistance or of services under Title IV-D of the "Social Security Act," 88 Stat. 2351 (1975), 42 U.S.C.A. 651, as amended, or the alleged father's personal representative.
(Emphasis added.)
The terms of R.C. 3111.04(A) must be read in tandem with the presumption of parentage accorded to a child born of an intact unitary family set forth in R.C. 3111.03:
 (A) A man is presumed to be the natural father of a child under any of the following circumstances:
 (1) The man and the child's mother are or have been married to each other, and the child is born during the marriage or is born within three hundred days after the marriage is terminated by death, annulment, divorce, or dissolution or after the man and the child's mother separate pursuant to a separation agreement.
 (B) A presumption that arises under this section can only be rebutted by clear and convincing evidence that includes the results of genetic testing[.]
In the instant case, Bryan Goeller was born during the intact marriage of Ben and Rondi Goeller. Pursuant to R.C. 3111.03(A)(1), Ben was properly presumed to be the natural father of Bryan. The terms of R.C.3111.04(A) were the provisions invoked by Lorence when he filed his action for parentage. Genetic testing later showed that Lorence was likely the biological father.
 3. The Due Process Clause and the Family
In Troxel v. Granville (2000), 530 U.S. 57, 65-66, the United State Supreme Court set forth an elegant summary of how the due process clause protects the rights of parents and families:
 The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." We have long recognized that the Amendment's Due Process Clause, like its Fifth Amendment counterpart, "guarantees more than fair process." Washington v. Glucksberg, 521 U.S. 702, 719, 138 L.Ed.2d 772, 117 S.Ct. 2258 (1997). The Clause also includes a substantive component that "provides heightened protection against government interference with certain fundamental rights and liberty interests." 521 U.S. at 720; see also Reno v. Flores, 507 U.S. 292, 301-302, 123 L.Ed.2d 1, 113 S.Ct. 1439 (1993).
The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S. 390, 399,401, 67 L.Ed. 1042, 43 S.Ct. 625 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own." Two years later, in Pierce v. Society of Sisters, 268 U.S. 510,534-535, 69 L.Ed. 1070, 45 S.Ct. 571 (1925), we again held that the "liberty of parents and guardians" includes the right to direct the upbringing and education of children under their control." We explained inPierce that "the child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."268 U.S. at 535. We returned to the subject in Prince v. Massachusetts,321 U.S. 158, 88 L.Ed. 645, 64 S.Ct. 438 (1944), and again confirmed that there is a constitutional dimension to the right of parents to direct the upbringing of their children." It is cardinal with us that the custody, care and nurture of he child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." 321 U.S. at 166.
In subsequent cases also, we have recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children. See, e.g., Stanley v. Illinois, 405 U.S. 645, 651,31 L.Ed.2d 551, 92 S.Ct. 1208 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `comes to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'" (citation omitted.)); Wisconsin v. Yoder, 406 U.S. 205,232, 32 L.Ed.2d 15, 92 S.Ct. 1526 (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); Quillion v. Walcott,434 U.S. 246, 255, 54 L.Ed.2d 511, 98 S.Ct. 549 (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."); Parham v. J.R., 442 U.S. 584,602, 61 L.Ed.2d 101, 99 S.Ct. 2493 (1979) ("our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course."); Santosky v. Kramer, 455 U.S. 745,753, 71 L.Ed.2d 599, 102 S.Ct. 1388 (1982) (discussing "the fundamental liberty interest of natural parents in the care, custody, and management of their child."); [Washington v. Glucksberg, 521 U.S. 702, 720,138 L.Ed.2d 772, 117 S.Ct. 2258] ("In a long line of cases, we have held that, in addition to the specific freedoms protected by the Bill of Rights, the `liberty' specially protected by the Due Process Clause includes the right to direct the education and upbringing of one's children." (citing Meyer and Pierce)). In light of this extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.
The question that confronts this Court then, is where in the panoply of fundamental family rights does the right of a presumed father of a child born in an intact marital union fall as against litigants who would subsequently assert parentage.
My determination of that question is informed by review of Michael H.v. Gerald D. (1989), 491 U.S. 110. In California, an adulterous biological father, Michael H., sought to be determined the father of the child born of an intact unitary family. California law accorded the husband to challenge the parentage of a child born during an intact marriage, but no other. Id. at 118-119. In the plurality opinion, the Court introduced its analysis with a practical observation: "At the outset, it is necessary to clarify what he sought and what he was denied. California law, like nature itself, makes no provision for dual fatherhood." Id. at 118. The Court concluded that the adulterous biological father did not have a liberty interest traditionally protected by society that would give rise to substantive due process rights. Id. at 129-130.
The plurality discussed the constitutional sanctity of the unitary family at length, observing "the historic respect — indeed, sanctity would not be too strong a term — traditionally accorded to the relationships that develop within the unitary family." Id. at 123. The Court went on to quote Justice Lewis Powell "`Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition.'" Id. at 123-124, quoting Moore v. East Cleveland
(1977), 431 U.S. 494, 503 (Powell, J., plurality). The Court explored the traditions of our law and jurisprudence and concluded that "our traditions have protected the marital family against the sort of claim Michael [i.e. the adulterous biological father] asserts." Id. at 124.
Ultimately, the Michael H. Court held that "It is a question of legislative policy and not constitutional law whether California will allow the presumed parenthood of a couple desiring to retain a child conceived within and born into their marriage to be rebutted." Id. at 129-130. The foregoing does not vitiate the Court's analysis of the constitutional protections accorded a unitary family. Read in context, the passage was meant merely to convey that Michael H., the adulterous natural father, had no fundamental right to litigate parentage.[1] SeeMerkel v. Doe (1993), 63 Ohio Misc.2d 490, 495.
Merkel is factually analogous to this case, with an adulterous claimant filing a parentage action for a child born within an intact marriage. InMerkel, the court construed Michael H. and concluded that the adulterous claimant was without standing to file the action because R.C. 3111.04(A) was unconstitutional. Merkel, supra, at 498-499. Specifically, theMerkel court concluded that R.C. 3111.04(A) was: (1) an unconstitutional infringement on the fundamental family interest, and (2) not narrowly tailored and overbroad. Id. at 493, 497.
R.C. 3111.04(A) was an unconstitutional infringement because an intact family has "a constitutionally protected interest in maintaining the privacy and integrity of their relationship to one another and to their child." Id. at 493. The Merkel court concluded its analysis by looking to the Sixth Circuit courts for constitutional protection of the family, solace for the child that stands to be harmed by an intrusive parentage action filed by an adulterous claimant:
 Sixth Circuit courts have also held that parents have a liberty interest in the freedom of personal choice in matters of family life in which the state cannot interfere, and that such an interest is a fundamental one, subject to due process protection. See Doe v. Staples (C.A.6, 1982, 706 F.2d 985, rehearing denied (1983), 717 F.2d 953, certiorari denied (1983), 465 U.S. 1033, 104 S.Ct. 1301, 79 L.Ed.2d 701; Elam v. Montgomery Cty. (S.D.Ohio 1983), 573 F. Supp. 797. Particularly relevant to this case is the Ohio Supreme Court's decision in Saunders v. Clark Cty. Zoning Dept. (1981), 66 Ohio St.2d 259, 20 O.O.3d 244, 421 N.E.2d 152, in which the court held that a family unit, regardless of its composition, is constitutionally protected. Obviously, an attempt to determine that John Jr. is not the biological child of the father in whose family he is being raised, at this crucial stage in his development, would likely disrupt the marriage, the existing parent-child relationships, and the emotional and psychological bonds which have formed between John Jr. and his parents.
Id. at 495-496.
The Merkel court found the statute to be overbroad since putative fathers conceivably have a protected interest, but only where the putative father has developed a substantial relationship with the child.Id. at 495, citing Stanley v. Illinois (1972), 405 U.S. 645. R.C.3111.04(A) does not hew to this fine line, rather it cuts a broad swath into every intact marriage — regardless of whether the putative father has a substantial relationship with the child. Id. at 497-498. Accordingly, since R.C. 3111.04(A) fails to acknowledge the constitutional nuances surrounding the putative father's rights, the statute is not narrowly tailored, and is overbroad.
Whatever subjective motivations Lorence may have to litigate the fate of a loved child, it represents a second invasion against the Goeller family. One that is repelled by the traditional constitutional protections accorded an intact unitary family. Lorence's litigation has brought public infamy to the Goeller marriage, taxed judicial resources, and, most importantly, plunged the minor child Bryan into a bizarre legal and moral odyssey unsuitable for one of such tender years. Considering the profundity of the lower court's action, this case is a matter of great public import. I would find R.C. 3111.04 unconstitutional as applied to Goeller. I would order that the parentage action filed by Lorence be held for naught, and be dismissed. Lastly, I would order that Ben Goeller remain the sole custodial parent of the minor child Bryan. I dissent from the resolution of assignments of error one and two.
[1] Three other appellate districts have abdicated a complete constitutional analysis of R.C. 3111.04 because they have misread MichaelH. v. Gerald D., supra, and concluded that the question presented was a matter of legislative policy and statutory construction. Patrick T. v.Michelle L. (Nov. 30, 2000), Wood App. No. WD-00-005, unreported (Sixth District); In the Matter of Everidge (Apr. 21, 1998), Ross App. No. 97CA2314, unreported (Fourth District); Crawford Co. CSEA v. Sprague
(Dec. 5, 1997), Crawford App. No. 3-97-13, unreported (Third District). This contracted, summary approach misses the point — that unitary families have traditionally been accorded constitutional protection against intrusion. Michael H., supra. See, also Carey v. PopulationServ. Internatl. (1977), 431 U.S. 678 (individual right to decide whether to bear children); Loving v. Virginia (1967), 388 U.S. 1, (right to choose whom to marry); Griswold v. Connecticut (1965), 381 U.S. 479, (married couple's right to use contraceptives in the privacy of their home); Prince v. Massachusetts (1944), 321 U.S. 158, (due process encompasses the family relationship); Meyer v. Nebraska (1923),262 U.S. 390, (right to choose child's education). This Court also notes that while the Ohio Supreme Court has construed the statutory terms of R.C. 3111.04, the Court has never reviewed a constitutional challenge to the statute. See, e.g., Joseph v. Alexander (1984), 12 Ohio St.3d 88;Hulett v. Hulett (1989), 45 Ohio St.3d 288.