SAUNDERS ET AL., APPELLEES, *v.* CLARK COUNTY
ZONING DEPARTMENT, APPELLANT, ET AL.

(No. 80-756—Decided May 27, 1981.)

*Mr. Michael C. Donovan,* for appellees.

*Mr. James A. Berry* and *Mr. Thomas W. Wilson,* for appellant.

CLIFFORD F. BROWN, J.   The issue raised here is whether the home of appellees is a boarding house, and therefore not a "family" as defined by the Clark County Zoning Resolution. If

Horizon House is not a "family," it is not a permitted use in an area zoned "R-1 suburban residence district."

Resolution of this issue requires the interpretation and application of general principles of zoning law and the relevant provisions of the Clark County Zoning Resolution. The case also demands awareness of the sanctity which our system of governance affords the family.

After close examination of the relevant provisions of the zoning resolution and giving due deference to the applicable principles of law, we hold, as did the Court of Appeals, that Horizon House does fit the definition of "family" under Subarticle 4.18 of the zoning resolution. Therefore, the appellees are entitled to declaratory judgment relief authorizing use of the Horizon House for the described purpose of a foster home.

All zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. *In re University Circle Inc.* (1978), 56 Ohio St. 2d 180, 184; *Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 76; 3 Anderson, American Law of Zoning (2d Ed.) 4, Section 16.02. Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include limitations not clearly prescribed. *Davis* v. *Miller* (1955), 163 Ohio St. 91, 95 (Taft, J., concurring); *State, ex rel. Ice & Fuel Co.,* v. *Kreuzweiser* (1929), 120 Ohio St. 352; *State, ex rel. Moore Oil,* v. *Dauben* (1919), 99 Ohio St. 406, paragraph one of the syllabus.

The decision of the trial court herein does not do justice to these elementary principles of real property law which favor the property owner. The opinion of the Court of Appeals, however, is in perfect harmony with these tenets.

The relevant provisions of the zoning resolution to be applied herein are as follows:

"Article 4. *DEFINITIONS*

"4.00: Unless the context otherwise requires, the follow-

ing definitions shall be used in the interpretation and construction of the Resolution;***"

"4.08: *Boarding or Lodging House.* A building or part thereof, other than a hotel or restaurant, where meals and/or lodging are provided, for compensation, for five (5) or more persons not transients."

"4.171: *Dwelling, Single-Family.* A building designed for or used exclusively by one family or housekeeping units."

"4.174: *Dwelling Unit.* One room, or a suite of two or more rooms, designed for or used by one family for living and sleeping purposes and having only one (1) kitchen or kitchenette."

"4.18: *Family.* A person living alone, or two or more persons living together as a single housekeeping unit, in a dwelling unit, as distinguished from a group occupying a boarding house, lodging house, motel or hotel, fraternity or sorority house."

"Article 8. R-1 *SUBURBAN RESIDENCE DISTRICT*"

"8.02 Principal permitted uses."

"8.021: Single-family detached dwellings."

The definition in Subarticle 4.18 of a "family," as "two or more persons living together as a single housekeeping unit, in a dwelling unit," distinguishes it from a group occupying a boarding house. Similarly, the zoning resolution distinguishes between a single-family dwelling unit and a boarding house upon the basis of whether it is used by a family, or by persons who are merely provided meals and lodging. Since the building Horizon House has occupied fits within the meaning of "dwelling unit" as described in Subarticle 4.174,[1] the only definition critical to this issue is that of "family." If Horizon House is occupied by a "family" in the sense that term is used in Subarticles 4.171 and 4.174 and in the remainder of the zoning resolution, then it cannot be deemed to be a boarding house

---

[1] The appellees' home was designed to accommodate a large family. There is nothing inherently evil about a large house with many rooms existing in a single family residential use district and serving a large family. On the contrary, this situation is inherently good and should be encouraged and admired. Until recently, large families with a dozen or more natural children were typical in many settings. This household consists of a husband and wife, their five children, and not more than nine foster children. They live in a house large enough to accommodate an even bigger family.

within the meaning of Subarticle 4.08, and it is a permitted use in an "R-1 suburban residence district."

The definition of "family" in this resolution is a broad one. In our view, any resolution seeking to define this term narrowly would unconstitutionally intrude upon an individual's right to choose the family living arrangement best suited to him and his loved ones. *Moore* v. *East Cleveland* (1977), 431 U. S. 494, 499. Those loved ones can just as easily be foster children as natural children for parents with compassion. A state or local government cannot constitutionally invade the private realm of family life. *Wisconsin* v. *Yoder* (1972), 406 U. S. 205, 231-233; *Prince* v. *Massachusetts* (1944), 321 U. S. 158, 166; *Village of Belle Terre* v. *Boraas* (1974), 416 U. S. 1, dissenting opinion of Marshall, J. at page 16.[2] A family unit, which performs the social function of child-rearing, regardless of its relationship or composition or whether it includes foster children as well as natural children, is constitutionally protected against governmental intrusion not supported by a compelling governmental interest. *Smith* v. *Organization of Foster Families* (1977), 431 U. S. 816, 844-845; *Wisconsin* v. *Yoder, supra; Meyer* v. *Nebraska* (1923), 262 U. S. 390, 399-401; 91 Harvard L. Rev. 1427, 1571-1574.[3]

Therefore, based on the above principles and language of the zoning resolution, we hold a family based group foster home for delinquent boys, who are unrelated by affinity or consanguinity to the foster parents, is a permitted use in an "R-1 suburban residence district" where the zoning resolution defines the term "family" as "two or more[4] persons living

---

[2] The pertinent portion of the dissenting opinion of Justice Marshall in *Boraas, supra,* is as follows:

"The choice of household companions — of whether a person's 'intellectual and emotional needs' are best met by living with family, friends, professional associates, or others — involves deeply personal considerations as to the kind and quality of intimate relationships within the home. That decision surely falls within the ambit of the right to privacy protected by the Constitution."

[3] Compare *Pierce* v. *Society of Sisters* (1925), 268 U. S. 510, which held the state to have unconstitutionally abridged "the liberty of parents and *guardians* to direct the upbringing and education of children under their control." (Emphasis added.) *Id.* at 534-535.

[4] In oral argument appellant raised the spectre that the decision of the Court of Appeals, if affirmed, would permit appellees to house as many as 80 or more wayward

together as a single family housekeeping unit, in a dwelling unit," where it defines "dwelling unit" as "one room or a suite of two or more rooms, designed for or used by one family for living and sleeping purposes and having only one (1) kitchen or kitchenette," and where it defines "single-family dwelling" as "[a] building designed for or used exclusively by one family or housekeeping unit."

Appellant makes untenable contentions that the appellee's foster home does not fit the definition of "family" in the zoning resolution or for other reasons is not a permitted use in the "R-1 suburban residence district."

Appellant argues that the payment by the youth commission to appellees for the care of youths housed in Horizon House constitutes "compensation" for the provision of "meals and/or lodging," within the definition of "boarding house" in the zoning resolution, thereby removing this foster home from the definition of a "family."

The term "compensation" contemplates money paid to a commercial operation which provides the meals or lodging. The receipt of compensation by appellees for the care of the foster children, however, makes them no less a "family" than would the receipt of child support payments by a mother from her separated or divorced husband lessen her "family" status.

Appellant also extensively catalogues the fact that the counseling, recreational and social services provided these children are not usually afforded natural children; that salaries are paid to staff members assisting in the appellees' home; that Horizon House qualifies for free food from a federal agency; and that the control and supervision of the home is by another adult couple rather than the plaintiff and his wife. Appellant argues that these and other facts preclude Horizon House from fitting the definition of "family" in Subarticle 4.18. These facts are totally irrelevant and immaterial. They

---

boys as part of the Saunders' family, thereby making Horizon House the equivalent of a barracks style boarding house with multiple apartment units. Health department laws, youth commission supervisory rules and licensing, as well as the nuisance law, would prevent this vision of a rural slum from ever becoming a reality. Even speculation that 20 or 30 boys might be fostered borders on the absurd. The youth commission license permits plaintiff and his wife, and other similarly situated parents, to have no more than ten boys placed in a single foster home. A seven-bedroom house, like Horizon House, would provide ample space for ten boys.

shed more heat than light on the issue before us, namely, the correct determination of the meaning of the definition of "family" in the resolution. The definitions of "family," "dwelling unit" and "single-family dwelling" must be carefully studied without encrusting them with the barnacles of one's own notions and prejudices of what kind of "family" should live in an "R-1 suburban residence district."

We now interpret the term "family" broadly in order to permit appellees to operate a foster home in an "R-1 suburban residence district." Such a broad definition of "family" is mandated by the Clark County Zoning Resolution, fundamental principles of zoning law, and immutable constitutional principles guaranteeing the right of every American to live with his family free from official harassment.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. BROWN, P. BROWN and SWEENEY, JJ., concur.

CELEBREZZE, C. J., LOCHER and HOLMES, JJ., dissent.

HOLMES, J., dissenting.    Principles of law as pronounced by the highest court of the state should remain the case law of the state unless sound reason, or changing patterns and needs of the times, dictate a modification in order to best serve the public. Although I am in agreement with this basic premise of *stare decisis,* I also accept the principle that our common law should be flexible to meet our current public and professional needs. But the flexibility effected by this decision, which, in effect, overrules syllabus law as pronounced by this court only nine months ago, in *Garcia* v. *Siffrin* (1980), 63 Ohio St. 2d 259, transforms the law of *stare decisis* into that which assumes a stability not unlike a revolving door. It would seem that the law of this state will now be governed by what might be the personnel of the court, or the panel hearing and writing upon a case, or both, at any given point in time.

LOCHER, J., concurs in the foregoing dissenting opinion.