JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal by the North Royalton Planning Commission ("Commission") from an order of Judge Kenneth R. Callahan that reversed its denial of an extension on a preliminary plat approval for land Saks Goldberg Companies ("Saks") seeks to develop in that city. We affirm.
 {¶ 2} The facts underlying this dispute were summarized by this court in Saks Goldberg Cos. v. North Royalton Planning CommissionI ("Saks I"):[1]
 {¶ 3} "[Saks] is the developer of both the Pinestream and Pine Hill subdivisions proposed in North Royalton. On November 1, 1995, [Saks] received preliminary plat approval for the Pine Hill subdivision. This approval remained in effect for one year. See Section 1244.0[6] of the North Royalton Planning and Zoning Code. Pursuant to subsection (f) of this provision, however, the Planning Commission may grant a six-month extension of time, as it deems necessary, `upon showing in writing of undue hardship or practical difficulty on the part of the owner of the subdivision.'
 {¶ 4} "On October 17, 1996, or while the preliminary plat approval remained in effect, [Saks] requested an extension of time. On November 5, 1996, or four days after expiration of the preliminary plat approval, the Planning Commission held a hearing on the matter. The facts as adduced at the hearing indicate that in 1994, the Planning Commission gave Sketch Plan approval of both proposed subdivisions. In 1995, the Planning Commission gave preliminary plat approval of Pinestream. It is undisputed that the preliminary plat for Pinestream included a sewage system designed to discharge into the Medina County Sewage System. The city subsequently notified plaintiff that the sewage lines had to discharge into the city's sewer systems. This in turn required the Pinestream and Pine Hill systems to be redesigned. As redesigned, the Pine Hill system pumps into the Pinestream system. The Pinestream system in turn must pass through an elevated line across the Ohio Turnpike.
 {¶ 5} "The record further suggests that there was a delay in obtaining approval of the line from the Turnpike Commission, and at the time of the hearing before the Planning Commission, [Saks] was preparing to install piping at that location. It is undisputed that no construction was undertaken at the Pine Hill site. [Saks] maintained, however, that the only construction which could have been undertaken in the absence of completion of sewer lines is the clearing of land, and according to the city engineer, this was not advisable.
 {¶ 6} "It is also undisputed that after both subdivisions received Sketch Plan approval, the zoning for the sites was changed to rural residential."[2]
 {¶ 7} Under the new zoning regulations, the land Saks intended to develop could accommodate significantly fewer residential lots.
 {¶ 8} "The Planning Commission denied the request for an extension of the preliminary plat, noting that the preliminary plat approval had terminated on November 1, 1996, construction at the Pine Hill property had not begun, and plaintiff's explanation for failure to commence construction at the site did not, according to the Planning Commission, constitute undue hardship.
 {¶ 9} "On December 4, 1996, [Saks] filed this appeal to the court of common pleas pursuant to R.C. 2506.
 {¶ 10} "On June 2, 1998, the trial court affirmed the decision of the Planning Commission, noting that plaintiff failed to demonstrate that at the time of the hearing its preliminary plat approval `was tolled and did not in fact expire.'"[3]
 {¶ 11} We held, in Saks I, that the judge improperly found that the extension request was untimely or that the Commission could deny Saks' request on that basis, and remanded this case for the judge to decide whether, under R.C. 2506.04, the Commission's denial of the extension, on its merits, was supported by a preponderance of reliable, probative and substantial evidence.[4]
 {¶ 12} Initially, the judge remanded the case back to the Commission for findings on whether Saks' request for an extension was supported by a preponderance of reliable, probative and substantial evidence, and Saks appealed to this court. Saks then moved for reconsideration under Civ. R. 60,[5] which was granted, and Saks dismissed its appeal.
 {¶ 13} After a hearing on the merits of the appeal from the Commission's decision, the judge entered the following order:
 {¶ 14} "[Saks] appealed this court's decision to the Eighth Appellate District Court which in turn reversed and remanded the matter back to the trial court for a determination of whether the decision was supported by a preponderance of reliable, probative and substantial evidence in accord with Ohio Revised Code § 2506.04.
 {¶ 15} "The only option available to this court under Ohio Revised Code § 2506.04 and the law of the case, is to reverse the Planning Commission's denial of the Appellant's request for an extension of time. As the Appellate Court found, the relevant section of the North Royalton Planning and Zoning Code does not contain any time limits within which the extension must be requested. The Appellate Court also opined that regulations are in derogation of the common law and must therefore be construed in favor of the landowner; the provisions of these ordinances must be strictly construed and cannot be interpreted to include limitations not clearly proscribed.[6]
 {¶ 16} "In consideration of the aforementioned, this court finds that [Saks] are hereby found to have a vested right to commence construction under their previously approved subdivision [plat] for the Pine Hill Subdivision, which right will continue for a period of six (6) months after the latter of the date of this Journal Entry or the final ruling of any appellate authority upholding this decision."[7] The Commission appealed.
 {¶ 17} The Commission contends that the judge did not adhere to our instructions in Saks I because he did not determine whether its decision was supported by a preponderance of reliable, probative and substantial evidence. It contends he unjustifiably applied the "vested right doctrine," applicable to a landowner petitioning for a variance on land on which improvements have begun but which has been subsequently re-zoned to bar the landowner's originally intended purpose.
 {¶ 18} In reviewing a decision in an administrative appeal under R.C. Chapter 2506, we examine the record and the legal determinations of the judge to ascertain whether as a matter of law, his decision is supported by a preponderance of substantial, reliable and probative evidence.[8] Under R.C. 2506.04, we consider only questions of law, and we do not have the same extensive power to weigh the preponderance of the substantial, reliable and probative evidence that is granted to the judge.[9]
 {¶ 19} Reliable, probative and substantial evidence has been defined as follows:
 {¶ 20} "* * * (1) `Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) `Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) `Substantial' evidence is evidence with some weight; it must have importance and value."[10]
 {¶ 21} Therefore, under R.C. 2506.04, we must affirm the judgment unless we find, as a matter of law, it is not supported by a preponderance of reliable, probative and substantial evidence.[11] This determination is tantamount to evaluating whether a judge abused his/her discretion,[12] implying the judge's attitude is unreasonable, arbitrary or unconscionable.[13]
 {¶ 22} We agree with the Commission that the judge's rationale in ruling in favor of Saks was flawed. He should not have decided on principles that zoning restrictions,[14] or statutes or ordinances,[15]
should be construed strictly against the Commission because they interfere with a landowner's use of his property. While, functionally, denying Saks the extension it sought altered its ability to use its land because it would have needed to either comply with, or seek a variance from, a now more restrictive zoning classification, the inquiry, both at the Commission and trial court levels was whether, under North Royalton Codified Ordinance ("NRCO")1244.06(f), Saks was entitled to an extension of its preliminary plat approval.
 {¶ 23} Similarly, overruling the Commission's decision by finding that Saks had a "vested right" to complete construction, purportedly the result of its having established a non-conforming use prior to the expiration of its permit, does not comport with our remand.[16] The only question before the Commission was whether an extension was appropriate under the specific provisions of NRCO. 1244.06(f), subject to the judge's decision on appeal under R.C. 2506.04.
 {¶ 24} NRCO 1244.06(f) in force at the relevant time period states:
 {¶ 25} "Approval Period. Conditional approval of any preliminary plat or any part thereof shall expire and become ineffective for all purposes one year after the date of Planning Commission approval unless: the plans and specifications and details required in Chapter 1248 of these Regulations for the improvements required have been submitted to and approved by the Engineer and Building Commissioner; the necessary easements for such improvements have been granted to and accepted by the Municipality in accordance with these Regulations, and such improvements have been placed under contract and actually commenced; and the final plat for record submitted. The Planning Commission may, however, grant an extension of such time as it deems necessary, not to exceed six months, upon a showing in writing of undue hardship or practical difficulty on the part of the owner or subdivider."
 {¶ 26} The question in this appeal is whether the judge abused his discretion in ruling in favor of Saks, under the criteria set forth in R.C. 2506.04; that is, was there a preponderance of reliable, probative and substantial evidence presented to warrant denial of Saks' plat extension? Did Saks present the requisite evidence of undue hardship or practical difficulty in failing to sufficiently develop its Pine Hill subdivision that would warrant the grant of a preliminary plat extension?
 {¶ 27} On November 5, 1996, Harvey Saks testified before the Commission that the preliminary plats approved by the Commission provided that both the Pine Hill and Pinestream residential developments would be constructed using sewer lines feeding into a treatment plant in Medina County. Subsequently, North Royalton enacted an ordinance mandating that all new sewer construction projects in the city would direct sewage to its municipal treatment plant and, as a result, sewer plans for both subdivisions had to be redesigned.
 {¶ 28} The revised and approved plans had the Pine Hill sewage directed into the Pinestream system that, of necessity, had to have larger pipes to accommodate the increased flow and for which Saks had to build a pump station large enough to propel the sewage from both subdivisions to the city's treatment facility. He explained that the redesign required the construction of a sewer pipe across the Ohio Turnpike and, while Pinestream had been almost completed, given other work he had to do, he did not think it feasible to begin major land improvements at the Pine Hill site without the Turnpike Commission's permission to construct the line over its highway.
 {¶ 29} Saks testified that delays in the Turnpike Commission's approval prolonged that process and set back his construction-clock for the Pine Hill site. He claimed that the redesign of both subdivisions resulted in a sewer system that was "significantly" larger and more expensive than it otherwise would have been[17] and, given the shape of the plat of the Pine Hill land, it would only be economically feasible to develop it at all under the then plat approval plan because the new zoning laws reduced the number of homes that could be built. Moreover, Saks explained that, as it was now November, construction would be more difficult during the imminent inclement weather which further necessitated an extension. City Engineer Charles Althoff told the Commission that the City required Saks to link the Pine Hill and Pine Stream subdivision sewer systems in the manner in which they were ultimately redesigned.
 {¶ 30} Commission members Bob Grace, Cathy Luks, and Craig Marvinney were greatly concerned that Saks was requesting an extension but had not undertaken any physical improvements at the Pine Hill site. Because the two subdivisions had been submitted and approved as distinct developments rather than two phases of one larger undertaking, they questioned why the considerations of the Pinestream improvements bore on the question of a possible plat approval extension for Pine Hill, and why an extension was warranted given the lack of current progress at the latter site. Although Commission Chairman Charles Rohrbach remarked that, were it not for the Pine Hill subdivision, the Pinestream sewer mains and pumping station would have been smaller, Ms. Luks and Marvinney both immediately dismissed this statement as "speculation." Marvinney also stated that he thought the proceedings were a "nullity," because the hearing on Saks' extension request was being held after expiration of its preliminary plat approval and, that the Commission was "* * * being asked to approve a preliminary plat approval that does not comport with the existing zoning regulations in that area of the City anew * * *." Although Rohrbach voted to approve, Commission members Grace, Ms. Luks, Marvinney, and Linda Watkins voted to deny the extension.
 {¶ 31} The Commission heard Saks' testimony and the undisputed circumstances that mandated the sewer system modifications to the Pinestream subdivision; it had also approved the preliminary plat of the Pine Hill subdivision before any change in zoning. The mere fact that improvements had not begun at Pine Hill is not a preponderance of reliable, probative and substantial evidence upon which to conclude that an extension is not warranted, and is completely non-determinative on whether Saks had demonstrated the undue hardship or practical difficulty, without specific regard to location, that made a Pine Hill subdivision temporary plat approval extension necessary.
 {¶ 32} Under the plain language of NRCO 1244.06(f), a developer requests an extension if insufficient work at a given pre-approved development site would otherwise cause the temporary plat approval to lapse, and assumes that work has not been sufficiently completed to authorize an otherwise impermissible development as an established nonconforming use of the land.
 {¶ 33} Although Commission members disputed that the oversized alterations to the Pinestream sewer system caused delays or that Saks needed to expend much more money on the overall sewer system for the two developments, there was significant evidence to the contrary. The later enacted city ordinance mandating the complete redesign of the sewer systems, the delays in obtaining the Turnpike Commission's permission to construct Pinestream's sewer line across its property and Saks' uncontradicted testimony all squarely rebut Ms. Luks' and Marvinney's completely unsupported characterization that these hardships and practical difficulties related only to the Pinestream subdivision's sewers and not to the Pine Hill site, where construction had yet to take place.
 {¶ 34} Most importantly, Saks was not, as Marvinney contended, attempting to secure a "preliminary plat approval that does not comport with the existing zoning regulations in that area of the City anew." Saks was trying to demonstrate that a preliminarily approved plat for the Pine Hill subdivision, on which he had relied to expend significant moneys in redesigning and constructing the city-mandated Pinestream development's sewer system, should be extended. That the Commission's decision may have been predicated upon the expiration of the original preliminary plat was legally incorrect and impermissible.[18]
 {¶ 35} Despite of the fact that the judge reversed the Commission's decision to deny Saks an extension on its Pine Hill subdivision plat for erroneous reasons, we hold that to do otherwise would have been reversible error. Regardless of any deference the judge would have given to the Commission's determination, or any conceivable evidence-weighing in which he may have engaged, the record does not in any way support the denial of the extension by a preponderance of reliable, probative and substantial evidence as required by R.C. 2506.04. Although a judge may reach a correct decision using erroneous rationale, if the judgment can be upheld as a matter of law, an appellate court will not reverse that decision.[19] We will affirm that judgment even if our reasoning differs from that used below.[20]
Judgment affirmed.
JAMES J. SWEENEY, J., AND TIMOTHY E. MCMONAGLE, J., CONCUR.
[1] (Nov. 10, 1999), Cuyahoga App. No. 74836.
[2] Id.
[3] Id.
[4] Id.
[5] The only motion under Civ. R. 60 is for relief from judgment.
[6] Saunders v. Clark (1981), 66 Ohio St.2d 259; Pinnacle WoodsSurvival Game, Inc. v. Hambden Twp. Zoning Inspector (1986)33 Ohio App.3d 139, as cited in [Saks I].
[7] See Journal, Vol. 2784, pg.0457.
[8] Dudukovich v. Housing Authority (1979), 58 Ohio St.2d 202,207.
[9] Kisil v. Sandusky (1984), 12 Ohio St.3d 30, 34.
[10] Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 571.
[11] Id.
[12] Id., 12 Ohio St.3d at 34, fn. 4.
[13] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[14] See Saunders, supra, fn. 5.
[15] See Pinnacle Woods, supra, fn. 5.
[16] See Torok v. Jones (1983), 5 Ohio St.3d 31; Smith v. Juillerat
(1954), 161 Ohio St. 424.
[17] While Saks attempted to quantify how much more expensive the system would be in its appellate brief, no dollar figure was mentioned in the record. We must comment in a pure aside, however, that persistent interruption and badgering from certain Commission members made it very difficult for Saks to present his testimony, and if allowed to speak freely, he may have provided the Commission with more information than is currently in the record.
[18] See Saks I.
[19] See Gunsorek v. Pingue (1999), 135 Ohio App.3d 695, 701, quotingState v. Payton (1997), 124 Ohio App.3d 552, 557, ("when a trial court has stated an erroneous basis for its judgment, an appellate court must affirm the judgment if it is legally correct on other grounds, that is, it achieves the right result for the wrong reason, because such an error is not prejudicial"); see, also, McCormick v. Haley (1973),37 Ohio App.2d 73, 77, (a court of appeals must affirm a judgment of the trial court if it reached the right conclusion, even if the determination was made through invalid reasoning").
[20] See Myers v. Garson, (1993), 66 Ohio St.3d 610, 614.