DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiff-appellant, John E. Kehoe ("appellant"), appeals the judgment of the Lawrence County Court of Common Pleas, which denied appellant's request for removal of a communications tower located on property adjacent to appellant's property, *Page 2 
but awarded appellant damages in the amount of $3,600. We affirm in part and reverse in part.
 {¶ 2} On March 4, 2005, appellant filed a complaint against defendant-appellee, Horizon Personal Communications, Inc. ("Horizon"). Appellant alleged that Horizon held an interest in land adjacent to a parcel of property owned by appellant and that a large communications tower was located on the Horizon property. That tower, appellant alleged, was erected in violation of the applicable zoning code, interfered with appellant's use and enjoyment of his property, and "greatly reduced the value" of his property. Appellant asked the court to order Horizon to remove the tower and for an award of $25,000.
 {¶ 3} Horizon filed an answer, which denied appellant's allegations. Horizon stated that its use of the property arose from a lease agreement with defendant-appellee, the City of Ironton ("the City"), and a permit issued by the Building Department of the City of Ironton. Horizon also alleged that appellant had failed to join all necessary parties.
 {¶ 4} Thereafter, appellant moved to join defendant-appellee, SBA Towers, Inc. ("SBA"), the assignee of Horizon, and Nextel Corporation as defendants in the action. The court granted the motion. Appellant then filed an amended complaint to include SBA as a defendant, again alleging that the tower violated applicable zoning laws, interfered with his use of his property, and reduced the value of his property. He sought damages in the amount of $250,000.
 {¶ 5} On October 14, 2005, appellant moved for summary judgment in his favor. He argued that the 195-foot tower violated the City's zoning ordinances. Specifically, *Page 3 
appellant argued that both his property and the property on which the tower was erected were within an R-1 Single Family district for zoning purposes.
 {¶ 6} Horizon and SBA opposed appellant's motion and also moved for summary judgment in their favor. Horizon and SBA presented evidence that the City owned the property on which the tower was constructed. The City and Horizon entered into a lease agreement dated April 2, 1998. The lease allowed the erection of a communications tower with adequate space for antennas for the Ironton Fire, Police, and Public Works Departments, and two additional antennas for future development. Attached to the motion was an affidavit from Karl Wentz, the building officer for the City. Wentz stated that, prior to the erection of the tower, the City had issued correspondence stating that the communications tower did not violate city zoning ordinances. Attached to Wentz's affidavit were letters dated November 13, 2000, and August 28, 2001. Each letter indicated that the communications tower, which replaced a pre-existing tower, fell within the definition of "Public Facilities" and, therefore, constituted a permitted use within a residential R-1 district.
 {¶ 7} Because appellant's complaint did not specify a cause of action, Horizon and SBA asserted that the cause of action had to be (1) nuisance, (2) trespass or (3) a zoning violation. R.C. 2305.09, they argued, applied a four-year statute of limitations to any claims of nuisance or trespass and barred these potential causes of action because the tower was erected in 1998 and appellant did not file his complaint until 2005. As for a zoning cause of action, Horizon and SBA argued that the tower fell within the definition of Public Facilities as a utility station and, therefore, that it was a permitted use under Section 1258.02 of the Revised Ordinances of the City of Ironton. Finally, Horizon and SBA argued that summary judgment in their favor was appropriate *Page 4 
because appellant had failed to join a necessary party, the City, and because the doctrine of laches precluded the action.
 {¶ 8} In response, appellant argued that no statute of limitations applied to zoning violations because each day of the violation constitutes a new offense. Appellant clarified that he was not seeking removal based on nuisance. Appellant did not mention trespass.
 {¶ 9} In June 2006, the court ordered Horizon and SBA to join the City as a party. On June 15, 2006, Horizon and SBA filed a cross-claim against the City. The cross-claim alleged that, if appellant's claims had merit, then the City was negligent and breached the lease agreement.
 {¶ 10} On December 15, 2006, the court issued an entry that, without discussion, denied all parties' summary judgment motions because factual issues remained. On December 22, 2006, the City moved for leave to file its own motion for summary judgment on the cross-claim.
 {¶ 11} Each of the parties filed a trial brief. In his brief, appellant again argued that the tower, as well as the attendant buildings and equipment at the base of the tower, violated applicable zoning laws. Appellant again argued that no statute of limitations applies to zoning violations.
 {¶ 12} The trial court held a bench trial on April 4, 2007. Appellant testified on his own behalf. He said that he attempted to visit his property in the summer of 2001. He remembered the time frame because his daughter had just gotten out of the Army, and she was wearing Army fatigues. He said he "hadn't been up there for years." (Tr. 9.) A gate blocked the access road, and he had to get a key from someone at the City in order to reach his property. *Page 5 
 {¶ 13} Appellant stated that his property consisted of about 300 feet of land along an old dirt road at the top of a ridge. He said the property had a beautiful view of the City of Ironton and the Ohio River. When he bought the property, the adjacent property contained an eight-by-eight-feet concrete block building, some fencing, and a sign warning of high voltage. Although these structures were not inconspicuous, they were somewhat "innocuous." (Tr. 11.) Next to these structures was a tower, approximately 30 or 40 feet high. At the time, he knew that both properties were zoned for residential use. He presented pictures of what he saw on the adjacent property when he visited in 2001.
 {¶ 14} Appellant did nothing with his property until 2002, when he had some of the land cleared to determine if he could build on it. In 2003, he advertised the property for sale, but the tower presented a problem for potential buyers. He admitted that he did nothing to address the tower's presence until he filed this lawsuit in 2005.
 {¶ 15} Conceding that he had to show damage, appellant stated that the tower and surrounding structures obstructed his view. The 50-by-50-feet compound, according to appellant, contained three buildings, a generator, a propane tank, several switching cabinets, and the 195-foot tower. He referred to "the trouble" he had with selling the property. (Tr. 21.) He also referred to the danger that the tower itself might present. He stated that he was "not trying to prove there is danger" beyond the compound. (Tr. 23.) Instead, it would "scare [him] off, from building a house next to [the compound]. That's one of the things that I have to show under the statute that I am damaged." (Tr. 23.)
 {¶ 16} Following his testimony, appellant rested. Horizon and SBA immediately moved for dismissal under Civ. R. 41. They argued that appellant had failed to present *Page 6 
any proof of damages or to prove a zoning violation, that the statute of limitations precluded his action, and that he had failed to join an indispensable party, the other tenants of the tower. The court did not immediately rule on the motion.
 {¶ 17} On cross-examination, appellant stated that he has been a magistrate for the Lawrence County Court of Common Pleas for 20 years. He conceded that the property and tower were visible from the courthouse. When asked how he could have missed the tower, appellant said, "I just did." (Tr. 48.)
 {¶ 18} Appellant confirmed that he purchased the one-acre property in 1984 for $1,800. Since then, he had only used the property for hiking and walking his dog. He agreed that, when he purchased the property, the adjacent property contained a 45-foot tower, a building, and some fencing. When he tried to sell the property, he did not put a price on it, and he never discussed a price with potential buyers.
 {¶ 19} Joe Corbin testified that he worked for Horizon at the time the property was leased from the City. He said Horizon removed the old tower, which had been used for communications for police, fire, and utilities, and put up the new tower. He said it would cost $20-25,000 to replace the new tower. The purpose of the new tower is to provide telecommunication service to people in the area, including wireless and cell phone service. It also provides enhanced capabilities to police, fire, and public utilities. If the tower were removed, a "huge hole" would exist in the area's communications service, and police and fire dispatch communication would be affected. (Tr. 97.) Removal would also affect the other tenants using the tower. The process of removing the old building and tower and replacing it with the new tower and facilities took about five or six months to complete. *Page 7 
 {¶ 20} Karl Wentz, the City's building officer, also testified. When asked whether he was involved in any notices or letters concerning zoning related to the new tower, Wentz stated: "I think I faxed some communications in regard to zoning in that area." (Tr. 117-118.) He said that the state of Ohio regulates communication towers, and towers do not require a local building permit. Although Wentz could not immediately recall whether the City issued correspondence stating that the tower would not violate zoning ordinances, when shown his prior affidavit, Wentz confirmed that such correspondence had been issued.
 {¶ 21} Bill Jones testified that he is a real estate appraiser and licensed broker. Horizon or SBA hired him to appraise appellant's property. In his opinion, the property is worth about $10,000, with or without the tower. The best use of the property is residential, and the cost of developing the property for residential use would exceed its value.
 {¶ 22} Following this testimony and the admission of exhibits, the trial concluded. Thereafter, appellant filed a proposed entry. His proposed entry includes the following: "Plaintiff first noticed this tower in the late summer of 2001 and filed this claim in March 2005. He has, apparently, elected not to pursue his claims for monetary damages, but requests this court to order the subject structure removed pursuant to [R.C.] 713.23."
 {¶ 23} On October 4, 2007, the trial court issued a judgment entry. The court found that appellant had not presented "any evidence of value or of financial damage to his property." The court concluded that the tower and surrounding facilities constituted a permitted use under city zoning laws. Although appellant had an obligation to pursue administrative remedies, he did not do so. *Page 8 
 {¶ 24} For relief, the court concluded that an injunction requiring removal of the tower was not an appropriate remedy. The court also concluded, however, that appellant had "proven a trespass upon his property incident to the building and construction of the tower." Accordingly, the court awarded appellant $3,600 in damages.
 {¶ 25} Appellant appealed, and he raises the following assignments of error:
 Assignment of Error No. 1
 The court erred when it concluded at paragraph 13 of its judgment entry that the telecommunication tower is a permitted use under Ironton Municipal Ordinance § 1258.02(c).
 Assignment of Error No. 2
 Having determined that the telecommunication tower is a permitted use in Error No. 1 the Court erred further in proceeding to balance the equities involved.
 Assignment of Error No. 3
 Having decided to balance the equities the Court ignored both the facts and the law committing an abuse of discretion.
 Assignment of Error No. 4
 The Court erred in finding the plaintiff had proven a trespass upon his property incident to the building and construction of the tower. Judgment Entry paragraph 16.
 Assignment of Error No. 5
 The Court erred in finding that (Judgment Entry, paragraph 9) prior to the erection of the tower the City of Ironton issued correspondence stating that the communication tower did not violate the zoning ordinance of the City.
 Assignment of Error No. 6
 The Court erred in concluding in paragraph 8 of its Judgment Entry "that the residents of Ironton will also suffer a severe loss of cellular phone services." *Page 9 
 Assignment of Error No. 7
 The Court erred in finding that the plaintiff cannot state when he noticed the erection of the tower.
 Assignment of Error No. 8
 The Court erred in its finding that the plaintiff failed to pursue administrative remedies. (Judgment Entry, paragraph 14.)
 Assignment of Error No. 9
 The Court erred in characterizing damages to the plaintiff as minimal. (Judgment Entry, paragraph 15.)
 {¶ 26} The City cross-appealed, and it raises the following cross-assignments of error:
 ASSIGNMENT OF ERROR NUMBER ONE:
 WHETHER THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-CROSS-APPELLANT THE CITY OF IRONTON BY FAILING TO RULE ON DEFENDANT'S MOTION FOR LEAVE TO FILE A MOTION FOR SUMMARY JUDGMENT?
 ASSIGNMENT OF ERROR NUMBER TWO:
 WHETHER THE TRIAL COURT ERRED WHEN IT HELD THAT TO THE PREJUDICE OF DEFENDANT-CROSS-APPELLANT THE CITY OF IRONTON BY FAILING TO RULE ON, AND THUS IMPLICITLY OVERRULED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT?
 ASSIGNMENT OF ERROR NUMBER THREE:
 WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE CITY OF IRONTON'S MOTION FOR DIRECTED VERDICT?
 ASSIGNMENT OF ERROR NUMBER FOUR:
 WHETHER THE TRIAL COURT ERRED WHEN IT RULED THAT PLAINTIFF PROVED A TRESPASS UPON HIS PROPERTY AND AWARDED DAMAGES?
 {¶ 27} Horizon and SBA also cross-appealed, and they raise the following cross-assignments of error: *Page 10 
 I. FIRST ASSIGNMENT OF ERROR
 The trial court erred in failing to dismiss plaintiff's complaint for failing to file within the statute of limitation of actions and for violating the laches doctrine.
 II. SECOND ASSIGNMENT OF ERROR
 The trial court erred by failing to dismiss the case because of Plaintiff's lack of standing.
 III. THIRD ASSIGNMENT OF ERROR
 The trial court erred in awarding damages to Plaintiff.
 IV. FOURTH ASSIGNMENT OF ERROR
 The trial court erred by not requiring the City of Ironton to indemnify Horizon/SBA for any damages awarded.
 {¶ 28} In his first assignment of error, appellant argues that the trial court erred when it concluded that the tower is a permitted use under Section 1258.02(c) of the Ironton City Code. We disagree.
 {¶ 29} All parties agree that the property on which the tower is located is within an R-1 district under the Revised Ordinances of the City of Ironton. Section 1258.02 states, in pertinent part:
 PERMITTED USES. In a Residence R-1 Single-Family District, no building, structure or land shall be used and no building structure shall be erected, altered or enlarged which is arranged, intended or designed for other than one of the following uses:
 (c) Public Facilities. Publicly owned and operated facilities of the Municipal, County, State and Federal governments as required to provide service to the residential area. Such facilities shall include * * * utility stations.
 {¶ 30} "Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled." Saunders v. Clark Cty. ZoningDept. (1981), 66 Ohio St.2d 259, 261. *Page 11 
Therefore, we must ordinarily construe zoning resolutions in favor of the property owner. Id., citing In re Univ. Circle Inc. (1978),56 Ohio St.2d 180, 184. We must strictly construe zoning ordinances that restrict the use of real property, and we may not extend the scope of restrictions to include limitations not clearly prescribed. Gennari v.Andres-Tucker Funeral Home, Inc. (1986), 21 Ohio St.3d 102, 104;Saunders at 261.
 {¶ 31} Here, the trial court concluded that the tower constituted a permitted use under the city zoning ordinances. To reach that conclusion, the court found that the City owns and operates at least a portion of the tower facilities, as required to provide communications service to residential areas. The evidence supports that finding.
 {¶ 32} The 1998 lease agreement between the City and Horizon provides that Horizon will use the real property "for the transmission and receipt of wireless communication signals and the construction and maintenance of a one hundred and ninety-five foot (195') self-supporting and maintenance free lattice tower; antennae, dishes, equipment cabinets, buildings and related facilities * * * (collectively the `Tower Facilities')." The new tower and facilities were to replace the City's pre-existing facilities "due to the desirability of [Horizon] to use [the City's] existing Tower Facilities Site." Horizon agreed to provide the City "with adequate space on the Tower and in the Tower Facilities for the location of one antenna each for the" City Fire Department, City Police Department, and City Public Works Department, and two spare antenna locations and spaces for emergency backup or the City's future developmental needs. The City's antennas were to be placed at least at the 100-foot level of the tower. Finally, Horizon also agreed to construct a new equipment shelter to accommodate the City's existing ground equipment, emergency backup systems, and future communications development. *Page 12 
 {¶ 33} Under the lease, Horizon also agreed "to market and lease tower space and the Tower Facilities to other communication providers or carriers" at market rates. Horizon agreed to pay the City (1) annual rent of $4,200 per year, and (2) 25 percent of the annual proceeds from any additional leases to other carriers. When the lease terminates, the tower and the surrounding facilities will become the property of the City.
 {¶ 34} The 1998 lease gave Horizon the authority to assign the lease, with the City's consent. Horizon assigned the lease to SBA in 1999.
 {¶ 35} Testimony before the court established that Horizon constructed the tower and surrounding facilities in accordance with the lease terms, over a period of five or six months in about 1998. The City's antennas on the tower service its police, fire, and public utilities departments. The new tower enhanced the City's communications capabilities by increasing its coverage and allowing better penetration.
 {¶ 36} Appellant argues that the tower and facilities are not public facilities for purposes of section 1258.02 because the public does not and cannot use the facilities. We conclude, however, that section 1258.02 does not limit public facilities only to those facilities open for physical use by the public. Section 1258.02 expressly includes utility stations, facilities generally not open to the public. Appellant does not dispute that the tower and facilities constitute a utility station.
 {¶ 37} More importantly, the tower undoubtedly serves the public. One of the purposes of the lease was to enhance the City's communications capabilities. Testimony established that removal of the tower would adversely affect those capabilities and would, at a minimum, disrupt police and fire transmissions.
 {¶ 38} To be sure, as the current lessee, SBA profits from the Tower Facilities. While the evidence before the court did not identify the additional tenants using the *Page 13 
tower, the lease and the testimony before the court suggested the presence of additional tenants and confirmed that removal of the tower would affect other tenants. Appellant has provided no authority, however, for the proposition that private profit from publicly owned property defeats its identity as a public facility for purposes of section 1258.02.
 {¶ 39} Based on the evidence before the trial court, we conclude that the trial court did not err in finding that the City owns and operates at least a portion of the tower and surrounding facilities or in concluding that these structures are public facilities for purposes of section 1258.02. Therefore, we overrule appellant's first assignment of error.
 {¶ 40} In his second assignment of error, appellant argues that the court, having concluded that the tower is a permitted use under the City's zoning laws, erred by proceeding to balance the equities between the parties. In his third assignment of error, appellant argues that, having engaged in a balancing of the equities, the court abused its discretion while doing so.
 {¶ 41} R.C. 713.13 prohibits the construction or maintenance of a structure in violation of a zoning ordinance. If such a violation occurs, the owner of an adjoining property may institute a suit for an injunction to terminate that violation. Having concluded that the tower does not violate the City's zoning laws, it was unnecessary for the court to consider whether an injunction was appropriate, and any error that might have arisen from that balancing is harmless. Therefore, we sustain appellant's second assignment of error and overrule his third assignment of error.
 {¶ 42} In his fourth assignment of error, appellant argues that the court erred in finding that he had proven a trespass upon his property and in awarding appellant *Page 14 
$3,600 in damages as a result of that trespass. In his brief, appellant explains that he alleged trespass against ATT in a separate case that was tried to the court at the same time as this one. That alleged trespass "did not involve either Horizon or SBA, and has been settled and dismissed." (Brief, 9.) Appellant also clarified that he "has neither alleged nor proven damages for trespass." (Brief, 10.) We agree. Appellant's complaints against Horizon and SBA did not allege trespass as to these parties, and appellant presented no evidence of damages as a result of a trespass by these parties. Accordingly, we sustain appellant's fourth assignment of error. For these same reasons, we also sustain the City's fourth assignment of error on cross-appeal and Horizon and SBA's third assignment of error on cross-appeal. We reverse that portion of the trial court's entry concluding that appellant had proven a trespass and awarding appellant damages in the amount of $3,600.
 {¶ 43} In his fifth assignment of error, appellant argues that the court erred by concluding that, prior to the tower's construction, the City issued correspondence indicating that the tower would not violate city zoning laws. We conclude, however, that the court had competent, credible evidence on which to make this finding. While Karl Wentz was initially uncertain about whether he issued that correspondence, upon being shown a copy of his affidavit, he agreed that he had issued it. Therefore, we overrule appellant's fifth assignment of error.
 {¶ 44} In his sixth assignment of error, appellant argues that the court erred by finding that the City's residents would suffer a severe loss of cell phone service if the tower were removed. Joe Corbin's testimony supports this finding, however. Corbin testified that one of Horizon's purposes for constructing the tower was to provide telecommunication service along the Route 52 corridor, including "[w]ireless, wireless *Page 15 
pcs or cellular telephone service." (Tr. 96.) If the tower were removed, Corbin testified, "[t]here would be a huge hole in the PCS service that's available." (Tr. 97.) Corbin also testified that removal of the tower could have an impact on police and fire cell phone communications, depending on the carrier for those communications. This evidence supports the court's finding that residents would suffer a severe loss of cell phone service if the tower were removed. But even if the evidence did not support this finding, we conclude that the court's factual finding in this respect had no impact on its legal conclusion that the tower and surrounding facilities constitute public facilities for purposes of section 1258.02. Therefore, we overrule appellant's sixth assignment of error.
 {¶ 45} In his seventh assignment of error, appellant asserts that the court erred in finding that he could not state when he first noticed the new tower. The court acknowledged that, at trial, appellant claimed that he first noticed the tower "sometime during the summer of 2001." That account was different from appellant's statement in his deposition that it could have been 2001 or 2002. We conclude that the trial court's findings in this respect are accurate. Again, however, this finding had no impact on the court's legal conclusions at issue here. Therefore, we overrule appellant's seventh assignment of error.
 {¶ 46} In his eighth assignment of error, appellant argues that the court erred in finding that he failed to pursue administrative remedies. Appellant admitted throughout the trial court proceedings that he took no formal action concerning the tower until he filed his lawsuit in 2005, and the court's finding in this respect is accurate. Again, however, this finding had no impact on the court's legal conclusions or the outcome of *Page 16 
the case for purposes of this appeal. Therefore, we overrule appellant's eighth assignment of error.
 {¶ 47} In his ninth assignment of error, appellant argues that the trial court erred in characterizing his damages as minimal. At trial, appellant testified that the tower interfered with his view and that it made him reluctant to build on his property. Although he testified that he had difficulty selling the property because of the tower, Bill Jones testified that appellant's property was worth about $10,000, with or without the tower. This evidence supports the trial court's conclusion that the injury to appellant was minimal. In any event, the court made this characterization in the context of balancing the equities between the parties for purposes of denying an injunction. As we have already concluded, however, it was unnecessary for the court to engage in this balancing, and any error that may have arisen from that balancing was harmless. Therefore, we overrule appellant's ninth assignment of error.
 {¶ 48} In conclusion, we sustain appellant's second and fourth assignments of error, and we overrule appellant's first, third, fifth, sixth, seventh, eighth, and ninth assignments of error. Based on our analysis of appellant's fourth assignment of error, we also sustain the City's fourth assignment of error on cross-appeal and Horizon and SBA's third assignment of error on cross-appeal, both of which relate to the trespass finding and award of damages. Our disposition of appellant's assignments of error renders the remaining assignments of error on cross-appeal moot, and we need not address them. We reverse the trial court's conclusion that appellant had proven a trespass to his property and the court's award of $3,600 in damages in appellant's favor. In all other respects, we affirm the judgment of the Lawrence County Court of Common Pleas. *Page 17 
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART. *Page 18 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART. Appellant/Cross-Appellee and Appellees/Cross-Appellants shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Bryant, J. Klatt, J.: Concur in Judgment and Opinion.*
* Judith L. French, J., Peggy L. Bryant, J., and William A. Klatt, J., of the Tenth Appellate District, sitting by assignment in the Fourth Appellate District. *Page 1