OPINION
{¶ 1} Defendant-appellant, Kelli Bush, appeals from the judgment of the Portage County Court of Common Pleas, permanently enjoining her from operating a dog rescue operation located on property she owns at 2246 Tallmadge Road, Brimfield Township, Ohio ("the property"). For the reasons that follow, we reverse.
 {¶ 2} In March 1995, appellant purchased the property which is comprised of 7.063 acres. The property is zoned "A Residential," and is subject to Brimfield Zoning *Page 2 
Resolution, Sections 20.1, et. seq., limiting the permitted use of the property to single family residential buildings.
 {¶ 3} Appellant is president and one of three board members of Precious Lives, a non-profit corporation involved in the rescue of unwanted or injured dogs and cats. The organization is run in conjunction with a veterinary clinic located in Akron, Ohio, which serves as the intake point for the animals.
 {¶ 4} From early 1995 until 2004, appellant lived in the residence located on the property and kept six or eight dogs there. During this period, appellant coexisted amicably with her neighbors who live on surrounding lots ranging in size from two-and-one-half to four-and-one-half acres.
 {¶ 5} Beginning in July 2003, appellant had several large outdoor cages erected on the property and began bringing and keeping between 50 to 80 dogs on the property.
 {¶ 6} Precious Lives receives as many as 200 calls per day from individuals and law enforcement about unwanted or injured animals. Veterinarians employed by Precious Lives treat the animals accepted into the program for their injuries, and the animals are kept at the property for care until a satisfactory permanent placement can be made. Prior to placement in an adoptive home, the animals are spayed or neutered. The new owner pays a fee to the organization in order to recoup the cost of care of the animals.
 {¶ 7} Eight or nine paid staff members from Precious Lives report every day to the property to care for the animals. The staff members arrive at approximately 8:00 a.m. each workday and stay on the premises until around 10:00 p.m. Weather permitting, during the day the dogs are kept in the outdoor cages. During evening hours *Page 3 
they are kept inside the house where some are kept in cages and others are allowed to roam free. On occasion, commercial delivery trucks arrive to deliver dog food to the property, although this activity occurs on a fairly irregular basis. Appellant lived on the property until early 2004, but currently there are no individuals living in the house. She testified that while she did not have permission from the township to run her shelter, she is licensed by the State of Ohio to do so.
 {¶ 8} In the fall of 2003, some of the adjoining property owners began to complain about the shelter to authorities. The chief complaint was the noise generated, consisting of barking from the dogs and shouting from the employees attempting to quiet them, as well as noise from delivery trucks. Some neighbors also complained about odors from the animals, which, they said, prevented them from enjoying certain outdoor activities in the summer. Others complained of occasional incidents involving dogs leaving the property and wandering the neighborhood until retrieved by either appellant or the employees of Precious Lives.
 {¶ 9} On January 30, 2004, the township board of trustees filed a complaint in the Portage County Court of Common Pleas, pursuant to R.C.519.24, seeking to enjoin appellant's animal rescue operation, alleging violations of township zoning and nuisance.
 {¶ 10} On May 2, 2004, the matter came before the magistrate for a hearing. At that time testimony was taken from appellant, a number of the complaining neighbors, the Brimfield Township Chief of Police, and two nearby neighbors who testified on appellant's behalf. On June 8, 2004, the magistrate granted a preliminary injunction preventing appellant from bringing additional dogs to the property, but allowing her to *Page 4 
continue to care for the dogs located there until another suitable location could be found. Appellant objected to the magistrate's decision. On September 7, 2004, the trial judge overruled her objections and adopted the magistrate's decision granting the preliminary injunction.
 {¶ 11} On February 14, 2005, pursuant to an agreement of the parties waiving further hearings, the magistrate granted judgment in favor of the township, permanently enjoining appellant from operating the animal rescue operation on the property. The magistrate concluded that "the Trustees have shown Defendant's use of her property is both a violation of zoning and a public nuisance," and ordered that appellant was not allowed "more than eight personal pet dogs to be present on [her] premises at any one time." Appellant again objected to the magistrate's decision. On March 9, 2005, the trial court adopted the magistrate's findings of fact and conclusions of law, and awarded the township a permanent injunction.
 {¶ 12} Appellant appealed, asserting the following assignment of error:
 {¶ 13} "The trial court erred by not applying the agricultural exceptions to Brimfield Township Zoning Ordinances and Ohio nuisance jurisprudence afforded to the appellant through The Ohio Revised Code Section 519.21 and Section 3767.13(D)."
 {¶ 14} Appellant inartfully frames the issue in this case as follows:
 {¶ 15} "Appellant's offenses which occurred on these premises are exempt from the Township resolution unless the court finds that the activity taking place at 2246 Tallmadge Avenue is not of an agricultural nature or that the activity itself, substantially adversely effects [sic] the public health, safety, and welfare." *Page 5 
 {¶ 16} We first determine whether appellant's care and boarding of dogs as part of her animal rescue operation constitutes "animal husbandry" and is therefore an agricultural purpose, rendering it exempt from township zoning.
 {¶ 17} An appellate court's review of the interpretation and application of a statute is a question of law subject to de novo review.Akron v. Frazier (2001), 142 Ohio App.3d 718, 721. Accordingly, an appellate court does not owe deference to the trial court's determination. Id.
 {¶ 18} The complaint in this matter alleges that the township brought this action against appellant pursuant to R.C. 519.24, which provides, in pertinent part:
 {¶ 19} "In case any building * * * or any land is or is proposed to be used in violation of sections 519.01 to 519.99 * * * of the Revised Code, or of any regulation or provision adopted by any board of township trustees under such sections, such board, the prosecuting attorney of the county, the township zoning inspector, or any adjacent or neighboring property owner who would be especially damaged by such violation, * * * may institute injunction * * * or any other appropriate action or proceeding to prevent * * * such unlawful * * * use."
 {¶ 20} R.C. 519.24 thus creates an enforcement action against a landowner who either uses or proposes to use his or her land in violation of any of the provisions of R.C. Chapter 519 or any township zoning resolution. Moskoff v. Bd. of Trustees of Deerfield Twp. (Dec.16, 1994), 11th Dist. No. 93-P-0103, 1994 Ohio App. LEXIS 5712, *5, citingBarbeck v. Twinsburg Twp. (1990), 69 Ohio App.3d 837, 840.
 {¶ 21} It is understandable that the Brimfield Township Trustees would want to take action due to concerns over the impact of appellant's dog rescue operation on *Page 6 
neighboring landowners. The testimony presented concerning the barking and smells associated with appellant's shelter demonstrates that she maintains an activity on the property which is difficult, at best, for her neighbors to endure. However, a township, unlike a municipal corporation such as a village or city, receives its powers from the Ohio General Assembly. Townships have no inherent or constitutional police power, the power on which zoning is based. The only police or zoning power Ohio townships have is that delegated to them by the General Assembly, and it follows that such power is limited to that which is expressly delegated to them by statute. Yorkavitz v. Bd. Of Trustees ofColumbia Township (1957), 166 Ohio St. 349, 351; see, also, Bd. ofTownship Trustees of Bainbridge Twp. v. Funtime, Inc. (1990),55 Ohio St.3d 106, 108.
 {¶ 22} R.C. 519.21 limits the extent to which a township board of trustees may regulate a landowner's use of property, as follows:
 {¶ 23} "(A) Except as otherwise provided in division (B) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes * * *.
 {¶ 24} "(B) A township zoning resolution * * * may in any platted subdivision * * *, or in any area consisting of fifteen or more lots * * * that are contiguous to one another * * * regulate:
 {¶ 25} "(1) Agriculture on lots of one acre or less;
 {¶ 26} "(2) Buildings or structures incident to the use of land for agricultural purposes on lots greater than one acre but not greater than five acres * * *; *Page 7 
 {¶ 27} "(3) Dairying and animal and poultry husbandry on lots greater than one acre but not greater than five acres * * *.
 {¶ 28} "Division (B) of this section confers no power on any township zoning commission, board of township trustees, or board of zoning appeals to regulate agriculture * * * and animal * * * husbandry on lotsgreater than five acres." (Emphasis added).
 {¶ 29} R.C. 519.21 thus limits the trustees' authority to regulate agricultural uses to lots less than five acres. Since appellant's property is over seven acres in size, the trustees do not have the power to prohibit agricultural uses under Revised Code Chapter 519. The dispositive issue is whether appellant's use of her property to board dogs awaiting adoption is an agricultural use as contemplated by the Revised Code.
 {¶ 30} R.C. 519.01 defines agriculture to include "animal husbandry, including, but not limited to, the care and raising of livestock, equine, and fur-bearing animals." In Harris v. Rootstown Twp. Zoning Bd.Appeals (1975), 44 Ohio St.2d 144, the Supreme Court of Ohio held: "The breeding, raising, and care of dogs constitutes [sic] animal husbandry, as that term is used in R.C. 519.01." Id. at paragraph one of the syllabus.
 {¶ 31} The Court further held: "Such animal husbandry is included in the term `agriculture,' as that pursuit is defined in R.C. 519.01, and does constitute the use of land * * * for agriculture within the meaning of R.C. 519.21." Id. at paragraph two of the syllabus.
 {¶ 32} Further, R.C. 955.03 provides: "[a]ny dog * * * shall be considered as personal property and have all the rights and privileges and be subject to like restraints as other livestock." Moreover, inBybee v. Bd. of Trustees of Springfield Twp. (Nov. 3, *Page 8 
1975), 1st Dist. No. C-74693, 1975 Ohio App. LEXIS 6301, the court held: "the dog is to be included within the class of animals customarily described as farm livestock and either as such, or as domestic animals, the dog is the subject for animal husbandry". Id. at *4.
 {¶ 33} The verb "to board" has been defined as "to provide with meals, or room and meals, regularly for pay." Webster's New World Dictionary, Concise Edition (1966), 82.
 {¶ 34} Appellee argues that since there was undisputed evidence adduced at the hearing that appellant was not in the business of breeding the dogs, the exception, as construed by the Supreme Court inHarris, does not apply. We disagree.
 {¶ 35} The Supreme Court explicitly rejected this notion as it applied to horses in Mentor Lagoons, Inc. v. Zoning Bd. of Appeals of MentorTwp. (1958), 168 Ohio St. 113. In that case the Court held that "[a] township zoning resolution may not prohibit the use of any land for agricultural purposes, including animal husbandry, which includes thekeeping of horses." (Emphasis added). Id. at paragraph three of the syllabus.
 {¶ 36} Likewise, this court has previously found no meaningful distinction between the breeding and boarding process, with respect to application of the agricultural exception to dogs. Fee v. WindwoodKennels, Inc. (Sept. 4, 1979), 11th Dist. No. 819, 1979 Ohio App. LEXIS 12144. In that case this court held: "Care of dogs, in either the breeding or boarding concept, involves housing, feeding, watering, health care, maintenance of sanitation requirements and numerous incidental items * * *. If the care of dogs under the caption of breeding of dogs differed considerably from that *Page 9 
care necessary to the boarding of dogs, we, conceivably, could find some merit to appellant's argument." Id. at *3.
 {¶ 37} Here, the undisputed evidence demonstrates that the rescue operation was the equivalent of a boarding operation and thus falls within the agricultural exemption. The animals in question, although not bred, were boarded and cared for on the premises until such time as they could be found a suitable home.
 {¶ 38} We therefore hold that the township cannot prohibit appellant's animal rescue shelter under its zoning authority.
 {¶ 39} The trial court also found that appellant's activities constituted a public nuisance under R.C. 3767.13(D), and enjoined appellant's animal activities on this additional basis. The township does not maintain on appeal that appellant's shelter constitutes a nuisance, but relies exclusively on its argument that appellant's activities are not agricultural in nature. Our analysis, supra, disposes of appellee's sole argument. However, since the trial court based its injunction in part on its finding that appellant's activities constituted a public nuisance, we shall next address this issue.
 {¶ 40} The difference between zoning compliance and nuisance prevention was recognized by the Ohio Supreme Court in Mentor Lagoons,Inc., supra. In that case the Court held: "[b]y concluding that a township zoning ordinance may not prevent the use of land for the keeping of [animals] even in a residential district, we do not mean to suggest that the keeping of [animals] in such a district may not, on the facts of a particular case, be a nuisance and subject to injunction as such." Id. at 120.
 {¶ 41} Initially, we note that appellee's public nuisance claim suffers from fatal procedural flaws. R.C. 3767.03 provides in pertinent part: *Page 10 
 {¶ 42} "Whenever a nuisance exists, the attorney general; the village solicitor; city director of law, or other similar chief legal officer of the municipal corporation in which the nuisance exists; the prosecuting attorney of the county in which the nuisance exists; the law director of a township that has adopted a limited home rule government under Chapter 504 of the Revised Code; or any person who is a citizen of the county in which the nuisance exists may bring an action in equity in the name of the state, upon the relation of the attorney general; the village solicitor, city director of law, or other similar chief legal officer of the municipal corporation; the prosecuting attorney; the township law director; or the person, to abate the nuisance and to perpetually enjoin the person maintaining the nuisance from further maintaining it. * * *"
 {¶ 43} Thus, under R.C. 3767.03, only a township that has adopted a limited home rule government may bring an action, and, if it does, it must do so by its law director "in the name of the state, upon the relation of * * * the township law director." The plaintiff in this action is the Board of Brimfield Township Trustees. Nothing in the record indicates that Brimfield is a home rule township or has a township law director. Further, this action has not been brought by a township law director in the name of the state and upon the relation of the township law director.
 {¶ 44} Further, if the county prosecutor brings the action, it must be brought in the name of the state, upon the relation of the county prosecutor. This action has not been brought by the county prosecutor in the name of the state, upon the relation of the county prosecutor.
 {¶ 45} This court has held that where the Revised Code requires an action to be brought in the name of the state on the relation of the petitioner, the failure of a *Page 11 
petitioner to file an action "in the name of the state on the relation of the person applying * * * requires this court to dismiss [the] complaint." Rome Rock Assn., Inc. v. Warsing (Mar. 1, 1991), 11th Dist. No. 90-A-1565, 1991 Ohio App. LEXIS 862, *2.
 {¶ 46} We therefore hold that this public nuisance action was not commenced by a proper party under R.C. 3763.03 and cannot be maintained.
 {¶ 47} We note that the undisputed evidence in this case supports the application of the agricultural use exemption to the nuisance statute. R.C. 3767.13 provides in part:
 {¶ 48} "(A) No person shall * * * maintain a * * * place for the * * * keeping * * * of an animal which, by occasioning noxious exhalations or noisome or offensive smells, becomes injurious to the health, comfort, or property of individuals or the public.
 {¶ 49} "* * *
 {¶ 50} "* * *
 {¶ 51} "(D) Persons who are engaged in agriculture-related activities, as `agriculture' is defined in section 519.01 of the Revised Code, and who are conducting those activities * * * in accordance with generally accepted agricultural practices and in such a manner so as not to have a substantial, adverse effect on the public health, safety, or welfare are exempt from division(A) * * * of this section * * * and from any * * * resolutions * * * or other enactments of a state agency or political subdivision that prohibits excessive noise."
 {¶ 52} Townships generally do not have authority to regulate in the interest of general welfare, but only have power to regulate in the interest of public health and safety. See R.C. 519.02; see, also,Union Twp. Bd. Of Trustees v. Old 74 Corp. (2000), 137 Ohio App.3d 289,296 n. 3, citing R.C. 519.02. *Page 12 
 {¶ 53} We have held, supra, that appellant's shelter falls under the agricultural use exemption to zoning under R.C. 519.01. Further, while there is evidence in the record that appellant's shelter is bothersome to her neighbors, there is no evidence that it "is injurious" to the "public health or safety." Finally, appellant's shelter is operated pursuant to a state-issued license. This evidences that it is operated "in accordance with generally accepted agricultural practices." There is no evidence in the record that the shelter is not conducted in accord with generally accepted agricultural practices. See Brown v. CountyCommissioners of Scioto County (1993), 87 Ohio App.3d 707, 713 ("conduct which is fully authorized by statute or administrative regulation is not an actionable tort.")
 {¶ 54} For the reasons stated in the Opinion of this court, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is reversed and the matter is remanded to the trial court to enter judgment in favor of appellant consistent with this opinion.
 COLLEEN MARY O'TOOLE, J., concurs, DIANE V. GRENDELL, J., dissents. *Page 1