[Cite as *Artz v. Elizabeth Twp.*, 2014-Ohio-854.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

MICHAEL D. ARTZ, et al.                 :

    Plaintiffs-Appellants              :           C.A. CASE NO.    2013 CA 36

v.                                      :           T.C. NO.    2012 CV 191

ELIZABETH TOWNSHIP                      :           (Civil appeal from
                                                     Common Pleas Court)

    Defendant-Appellee                 :

                                        :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of _____March_____, 2014.

. . . . . . . . . .

BRIAN D. HUELSMAN, Atty. Reg. No. 0055444 and JOSEPH P. MOORE, Atty. Reg. No. 0014362, 262 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
    Attorneys for Plaintiffs-Appellants

JOHN E. FULKER, Atty. Reg. No. 0003295, P. O. Box 8, 12 S. Cherry Street, Troy, Ohio 45373
    Attorney for Defendant-Appellee

. . . . . . . . . .

DONOVAN, J.

    **{¶ 1}**    This matter is before the Court on the Notice of Appeal of Michael and Janet

Artz, filed October 9, 2013. The Artzs appeal from the trial court's September 19, 2013 amended decision that dismissed count one of their complaint against Elizabeth Township, in which the Artzs sought declaratory judgment that they are "entitled to erect and operate an animal crematorium without having to seek the permission of Defendants and further whether [they] would be in violation therein of the Elizabeth Township Zoning Code."

{¶ 2} In their March 23, 2012 Complaint, the Artzs asserted that they own property at 3089 Benham Road, as well as adjoining property at 5760 E. Tipp Elizabeth Road, which is in an A-1 Agricultural District in Tipp City. According to the Complaint, the Artzs sought a conditional use permit to operate a dog kennel on their property in November, 2006. The Complaint provides that hearings were held on January 11, 2007 and February 7, 2007, and that the Artzs were granted the conditional use permit. The Complaint provides that the kennel is operational and that the Artzs "have also invested in equipment to operate an animal crematorium at the kennel facility." They asserted that they filed "this declaratory judgment action to have the Court determine if Plaintiff is required to obtain a conditional use permit or a zoning certificate to erect and operate an animal crematorium." They asserted that their "prospective use of the property to operate an animal crematorium is agricultural and is considered animal husbandry * * *." They asserted that they "have no other remedy of law in this matter as the Elizabeth Township Zoning Code is devoid of any reference to an animal crematorium." They asked the court to "review the Elizabeth Township Zoning Code and determine whether Plaintiff is entitled to erect and operate an animal crematorium without having to seek the permission of Defendants and further whether he (sic) would be in violation therein of the Elizabeth

Township Zoning Code."

{¶ 3} In a second count, the Artzs sought compensatory and punitive damages, in a third count they sought attorney fees, and in a fourth count they sought a writ of mandamus to order the Township to "commence condemnation proceedings and compensate [them] for the unlawful taking of their property."

{¶ 4} On March 23, 2012, Michael Artz filed a motion to bifurcate the action. On June 5, 2012, the trial court issued an Order setting the matter for trial as to count one only. A trial was held on October 26, 2012, at which Ted F. McDowell, the Zoning Inspector for Elizabeth Township, and Michael Artz testified. McDowell identified as Exhibit 1-A a blue binder containing documentation and correspondence demonstrating the Artzs' efforts to construct the kennel and crematorium. The binder contains Michael Artz's application for a conditional use permit to operate a "kennel facility," dated December 13, 2006, which was approved on February 8, 2007 and signed by Jay Benham, Chairman of the Board of Zoning Appeals. The application indicates that "the following conditions and safeguards were prescribed: Kennel 20 head maximum/ Note: attached notarize (sic) statement." Attached to the application is the notarized statement of Michael Artz, dated February 7, 2007, that provides as follows: "I Michael Artz of 3090 Benham Rd. do hereby give written assurance that I will not install or attempt to install a crematory on any property I own or control in Elizabeth Township, Miami County, Ohio either now or in the future."

{¶ 5} The binder contains correspondence, dated December 16, 2008, from counsel for Artz to Mark Altier, the Chief Civil Assistant in the Miami County Prosecutor's Office, that provides as follows:

* * *

At this time, Mr. Artz would like to operate a crematorium for pets on the premises. The operation of such appears to meet the Ohio EPA and Miami County Board of Health standards prior to commencement of operation. In reviewing the zoning code for Elizabeth Township, it does not appear that there is any zoning provision which would prohibit Mr. Artz from starting operation of the crematorium at this time. Mr. Artz is ready to begin to operate, but I wanted to contact you first.

I would ask that you please respond on behalf of Elizabeth Township and inform me as to whether you agree with my opinion or disagree. * * *

{¶ 6}   The binder contains correspondence, dated December 19, 2008, from McDowell to Altier "in reference to Moore and Associates correspondence dated December 16, 2008," which provides, "* * *  As defined 'Animal Husbandry' is the agricultural practice of breeding and raising livestock. Disposing of deceased animals or humans would fall under the title of Cemetery."  The correspondence provides that the Elizabeth Township Zoning Resolution ("Resolution") requires that any "'new cemetery shall be located on a site containing not less than forty (40) acres.['"] The correspondence concludes that the Artzs' 11 acre property does not comply with the Resolution's minimum requirement of 40 acres for a cemetery, and that Artz "would not be allowed to build his Pet Crematory in Elizabeth Township."  The correspondence provides that McDowell attached pages from the Resolution as well as a copy of Michael Artz's notarized statement.

{¶ 7}   The binder contains correspondence, dated December 31, 2008 from Altier

to counsel for Artz which provides that pursuant to McDowell's above correspondence, "the proposed use by Mr. Artz of his property * * * as the situs of an animal crematory is prohibited under relevant provisions of the Elizabeth Township zoning regulations."

{¶ 8} The binder contains correspondence, dated February 1, 2011 from counsel for Artz to the Elizabeth Township Board of Trustees, again asserting Artz's desire to operate a crematorium, as well as McDowell's response, dated February 8, 2011, which makes reference to Artz's sworn statement of February 7, 2007 and provides that "Elizabeth Township [] has not changed its position on this request for an Animal Crematorium and will not allow this operation." Finally, the binder contains correspondence from McDowell to Artz, dated June 26, 2012, which refers to "our phone conversation of June 25, 2012," and provides that Artz's property "did not meet the minimum acreage requirements under Elizabeth Township Zoning Resolution 512.03."

{¶ 9} Michael Artz testified that he owns a home on three and half acres in Elizabeth Township, and that he owns 11 acres across the street which is "only for agricultural use." He stated that his kennel is on the eleven acre property. Artz identified a depiction of an animal crematorium, and he stated that "[t]his particular unit will cremate up to seven hundred (700) pounds in five hours." He stated that he bought the crematorium from the Montgomery County Animal Shelter "when they built a new facility," and that he has "all the permits and everything and that testing that had been done on it is all documented." He stated that it has three heating chambers, reduces the carcasses to dust, and that it does not expel any ash from its "stack." Artz stated that he does not plan to bury anything on his property as a result of operating the crematorium, and that he "can return

[the remains] to the owners, or I can double bag them and take them to the landfill." Artz stated that a permit from "Regional Air Pollution Control" is required to install and operate the crematorium, and "they monitor * * * what comes out of the stack and everything, and they had all the records when I asked them about it."

{¶ 10}  Artz stated that the unit is currently outside, and that when installed, one third of it will be inside the kennel, namely the "face of it and controls, and then the other part, two-thirds * * * is outside of the building, and it's got a wire cage around it, and it has a stack which, like I said does not emit any type of smoke or anything.  It's just heat.  And because of it going to eighteen hundred degrees (1800), that's the reason it sets outside." Artz stated the dimensions of the device are "[S]ix by seven by ten by eight * * * foot high." Artz stated that he intends to "take the dogs at a full life cycle from puppies all the way to cremation, and to operate a kennel, I thought that was the best way to give my customers a full range of things that they could use."

{¶ 11}  On cross-examination, Artz stated that he acquired the equipment for his kennel and the crematorium at the same time.  When asked why his conditional use permit for the kennel was accompanied by his sworn statement regarding the crematorium,  Artz stated that a local woman "sent two hundred (200) flyers out in Elizabeth Township, in mail boxes, stating that I was going to spew dead animal ash over the township.  And in response to that, we had a packed capacity at the hearing for my zoning appeals meeting.  Because of that, they had to table it and then come back a month later because of the crowd that had come in and had been stirred up." Artz stated that the President of the Zoning Board, Jay Benham, whom Artz has known for 40 years, "asked me if I would have time to go out to the

Fifth Third Bank to sign a notarized statement that I would not do the crematorium because if you don't do this, you probably won't get your kennel." Artz stated that he filed his sworn statement "in between the meetings. We had my first appeals meeting, which was tabled, and then Jay presented this option for me, before the second meeting, so that we could quiet the crowd, because they knew it was going to be filled to capacity over this issue." Artz stated that at the time he "had already started, I already had the building up, and I was working on the inside of it." Artz stated that he completed the sworn statement "under coercion."

{¶ 12} When asked if he intended to use the crematorium only for dogs who die in his kennel, Artz responded as follows: "* * * I want to offer a service for a full rounded kennel operation. I - my dream was to take it from puppy stage to the death because you get a relationship with your customers and that is a very hard thing to do and I wanted to have that option there that I could help these people to get rid of - because the only place they had was in New Lebanon." Artz further testified, "* * * I had a dog park going in for the dogs to run. I had trails through the woods and stuff for people to walk dogs. * * * I have a pond and a beach for them to swim their dogs, and this was just another piece of the puzzle to make it work. To make the whole thing a facility that could serve the community." Artz denied that the crematorium is a commercial enterprise.

{¶ 13} The court allowed the parties to file post-trial briefs. In its amended decision, the trial court noted that "[a]gricultural uses are exempt from township zoning regulations," and that "R.C. 519.21 limits the trustees' authority to regulate agricultural uses to lots of less than five acres. Since the Artzs' property is over ten acres, the trustees do not

have the power to prohibit agricultural uses under Revised Code Chapter 519." The court further determined that "'the breeding, raising and care of dogs constitutes animal husbandry, as that term is used in R.C. 519.01,'" in reliance upon *Harris v. Rootstown Township Zoning Board of Appeals*, 44 Ohio St.2d 144, 338 N.E.2d 763 (1975). The court noted that counsel "for the Elizabeth Township concedes that the operation of a kennel by plaintiffs constitutes animal husbandry."

{¶ 14} The court noted that the Artzs' reliance upon *Angels for Animals, Inc. v. Beaver Township Board of Zoning Appeals,* 7th Dist. Mahoning No. 04 MA 80, 2004-Ohio-7209, "for the conclusion that an animal crematorium is a component of an agricultural use," is misplaced. The court noted that the applicant in *Angels* had "received a conditional use permit to operate an animal rescue shelter on the site of an abandoned slaughterhouse in a district that was zoned for industrial use," and then the applicant "sought a second conditional use permit to operate a crematory for dogs which it euthanized as part of its rescue operation." According to the trial court, " * * * the court's decision only addressed the use as appropriate to an industrial district," and it did not "discuss the use of a crematory as a component of animal husbandry in the context of an agricultural use." The court further determined that a "crematory is no more ancillary to the operation of a kennel than it would be to the operation of a hospital, or even a motel." The court concluded that the Artzs "failed to demonstrate that the operation of a crematory for animals is an agricultural use exempt from the zoning authority of Elizabeth Township."

{¶ 15} Finally, the court noted that the Artzs "seem to make an additional argument that an animal crematorium should be permitted in the A-1 agricultural district because there

is nothing in the zoning resolution which expressly prohibits it." The court noted that a cemetery is listed in section 302.04 of the Resolution, which sets forth conditional uses that require prior approval from the Board of Zoning Appeals. The court noted that the Resolution defines a cemetery, in section 1102.03(A), as "'Land used or intended to be used for the burial of animal or human dead and dedicated for cemetery purposes, including crematories, mausoleums, and mortuaries if operated in connection with and within the boundaries of such cemetery.'"

{¶ 16} The court reasoned as follows:

Plaintiff seems to argue that the operation of an animal crematorium does not fall within the definition of a cemetery, and therefore they do not have to apply for a conditional use permit. If an animal crematory is not listed as a potential conditional use, then it could only be operated if it falls within a "Permitted Principal Uses" for an A-1 district as listed in Section 302.02 of the Zoning Resolution. "Only a use designated as a permitted principal use shall be allowed as a matter of right in a zoning district." None of the permitted principal uses for an A-1 district describe an activity that would include the operation of a crematory for animals. If, as plaintiffs argue, an animal crematory does not fall within the operation of a cemetery as defined under the resolution, then plaintiffs would not qualify for a conditional use permit and cannot operate the animal crematory. The suggestion that the absence of a prohibition requires the defendant to permit the use is a non sequitor, unsupported by the terms of the Zoning Resolution

or any case authority cited by plaintiffs.

The court therefore finds that plaintiffs have failed to demonstrate that they are entitled to a declaration from this court that they are entitled to erect and operate an animal crematorium without permission from the Elizabeth Township zoning authorities or that such use would not be in violation of the Elizabeth Township Zoning Resolution. Count One of the complaint is dismissed, with prejudice.

{¶ 17} The Artzs assert two assignments of error herein which we will consider together. They are as follows:

"THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT APPELLANTS ARE REQUIRED TO OBTAIN A PERMIT FROM APPELLEE'S ZONING AUTHORITIES IN ORDER TO OPERATE AN ANIMAL CREMATORIUM ON PROPERTY THAT IS ZONED AGRICULTURAL,"

And,

"THE TRIAL COURT ERRED AS A MATTER OF LAW BY HOLDING THAT APPELLANTS' PROSPECTIVE USE OF AN ANIMAL CREMATORIUM IS CONSIDERED TO BE A CEMETERY."

{¶ 18} The Artzs assert that the "use of the property as a kennel is clearly within the Ohio courts' definition of an agricultural use. Taking this a step further, it is logical and acceptable that the erection and use of an animal crematorium in conjunction with the kennel is an agricultural use and categorized under animal husbandry." The Artzs assert that an "animal crematorium is an appropriate component of an animal shelter or a kennel." The

Artzs again rely upon *Angels for Animals* and assert that "it is very similar to this matter regarding the intended prospective use by Appellants." The Artzs assert that "the erection and operation of the animal crematorium is incidental to the kennel, which has clearly been established as an agricultural use." According to the Artzs, the "definition or the term animal crematorium is not addressed in the Elizabeth Township Zoning Resolution. * * * Zoning regulations deprive the owners of real property certain uses of it, and are in derogation of the common law. Such regulations must, therefore, be strictly construed and not extended by implication"

{¶ 19} In their Reply brief, the Artzs assert that there "is a logical connection between the operation of a kennel and an animal crematorium. The operation of both 'goes hand in hand.'" They assert that the trial court "misses the point that the animal crematorium is incidental to the kennel as there is both life and death in the care of an animal. The two areas are connected and should not be fragmented in any manner. The kennel is an unquestionable agricultural use and the animal crematorium is a logical use that follows." The Artzes direct our attention to 1994 Ohio Atty.Gen.Ops. No.94-018 which, in response to a request for an opinion regarding the operation of a pet cemetery, provides in part as follows:

> Your letter states that the humane society has constructed the crematorium as a means of disposing of the remains of dogs that have been lawfully destroyed. The construction and use of the crematorium for such purpose is plainly contemplated to fall within the statutory authority of the humane society. See R.C. 955.15. Again, as long as the county humane

society determines in a reasonable exercise of its discretion that making its crematorium available to the public for such purpose furthers the society's statutory objectives, it may make the use of its crematorium available to the public as a means of disposing of their deceased pets.

{¶ 20}   We initially note that we apply a de novo standard in reviewing the legal issue raised in the Artzs' action for declaratory judgment. *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586.

{¶ 21}   As noted by the Supreme Court of Ohio:

Ohio townships have no inherent or constitutionally granted police or zoning power. *Yorkavitz v. Bd. of Columbia Twp. Trustees* (1957) 166 Ohio St. 349, 351, 2 O.O.2d 255, 142 N.E.2d 655. "Accordingly, the zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly." *Bd. of Bainbridge Twp. Trustees v. Funtime, Inc.* (1990), 55 Ohio St.3d 106, 108, 563 N.E.2d 717.

In addition, "[a]ll zoning decisions, whether on an administrative or judicial level, should be based on the following elementary principles which underlie real property law. Zoning resolutions are in derogation of the common law and deprive a property owner of certain uses of his land to which he would otherwise be lawfully entitled. Therefore, such resolutions are ordinarily construed in favor of the property owner. Restrictions on the use of real property by ordinance, resolution or statute must be strictly construed, and the scope of the restrictions cannot be extended to include

limitations not clearly prescribed." (Citations omitted.) *Saunders v. Clark Cty. Zoning Dept.* (1981), 66 Ohio St.2d 259, 261, 20 O.O.3d 244, 421 N.E.2d 152. Furthermore, exemptions from restrictive zoning provisions are to be liberally construed. *State ex rel Moore Oil Co. v. Dauben* (1919), 99 Ohio St. 406, 124 N.E. 232, paragraph one of the syllabus. *Terry v. Sperry*, 130 Ohio St.3d 125, 2011-Ohio-3364, 956 N.E.2d 276*, ¶* 18-19.

**{¶ 22}** "R.C. 519.02 authorizes township trustees, in the interest of the public health and safety, to adopt resolutions limiting the size and location of buildings and other structures and the uses of land for trade, industry, residence, recreation or other purposes." *Id.*, ¶ 20. R.C. 519.21, however, "in general, prevents townships from prohibiting the use of land for agricultural purposes * * * ." *Id.* R.C. 519.21(A) provides:

> * * * sections 519.02 to 519.25 of the Revised Code confer no power on any township zoning commission, board of township trustees, or board of zoning appeals to prohibit the use of any land for agricultural purposes or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, * * * and no zoning certificate shall be required for any such building or structure.

"In other words, R.C. 519.21(A) provides two circumstances under which the use of a property is exempt from township zoning regulations: (1) the property is used for agricultural purposes or (2) the construction or use of buildings or structures on the property is incident to an agricultural use of the land." *Terry*, ¶ 21.

**{¶ 23}** R.C. 519.01 provides:

As used in sections 519.02 to 519.25 of the Revised Code, "agriculture" includes farming; ranching; algaculture meaning the farming of algae; aquaculture; apiculture; horticulture; viticulture; animal husbandry, including but not limited to, the care and raising of livestock, equine, and fur-bearing animals; poultry husbandry and the production of poultry and poultry products; dairy production; the production of field crops, tobacco, fruits, vegetables, nursery stock, ornamental shrubs, ornamental trees, flowers, sod or mushrooms; timber; pasturage, any combination of the foregoing; and the processing, drying, storage, and marketing of agricultural products when those activities are conducted in conjunction with, but are secondary to, such husbandry or production.

**{¶ 24}** Consistent with R.C. 519.21(A), Section 105.02 of the Resolution provides:

**Agriculture**. Nothing within this zoning resolution shall be construed to prohibit the use of any land for agricultural purposes, or the construction or use of buildings or structures incident to the use for agricultural purposes of the land on which such buildings or structures are located, * * * and no zoning certificate shall be required for any such building or structure. * * *

**{¶ 25}** Section 302 of the Resolution sets forth "A-1 Agricultural District Regulations," and Section 302.01 of the Resolution provides as follows:

**Purpose of District**. The purpose of the A-1 Agricultural District is

to recognize and accommodate the physical, social, and economic needs of the agricultural community within Elizabeth Township, Miami County, Ohio. Since agricultural pursuits provide a substantial economic base for Elizabeth Township, and a majority of its area still possesses an existing agricultural character and prime soils, it is the intent of this district to maintain and protect such areas. Only those land uses which perform necessary functions within the agricultural community will be encouraged to locate within the A-1 Agricultural District. Owners, residents, and other users of property within this district may be subjected to inconvenience, discomfort, and the possibility of injury to property and health arising from normal and accepted agricultural practices and operations. Including but not limited to: noise, odors, dust, the operation of machinery of any kind, including aircraft, the storage and disposal of manure, the application of fertilizers, herbicides, and pesticides. Owners, residents, and users of property within this district should, therefore, be prepared to accept these conditions, and are hereby placed on official notice that "right to farm" provisions within the Ohio Revised [C]od[e] may bar them from obtaining a legal judgment against such normal agricultural operations.

{¶ 26} Section 301.02 of the Resolution provides:

**Permitted Principal Uses.** Only a use designated as a permitted principal use shall be allowed as a matter of right in a zoning district. A use which is not specifically mentioned as a permitted principal use within the zoning

district shall not be permitted as a principal use upon any property by the Zoning Inspector until such use is added to the list of permitted principal uses through amendment of this zoning resolution.

{¶ 27}　　Section 301.03 of the Resolution provides: **"Accessory Uses.** Only uses designated as accessory uses shall be allowed as a matter of right in a zoning district.　Any accessory use not designated shall be allowed only upon appeal and after determination by the Board of Zoning Appeals that such use is customarily incidental and subordinate to the principal permitted use of the property."

{¶ 28}　Section 301.04 of the Resolution provides: "**Conditional Uses.**　Uses designated as conditional uses shall be permitted within a zoning district only upon issuance of a conditional use permit by the Board of Zoning Appeals in accordance with the provisions of Article 10, section 1002."

{¶ 29}　　Section 302.02 sets forth permitted principal uses in the A-1 Agricultural District, including agriculture, a single-family dwelling, public building or use such as parks, playgrounds, libraries, schools, fire stations and community centers, and wireless telecommunication facilities.　Section 1102.01 of the Resolution provides:

>As used in this Resolution, Agriculture shall be interpreted the same as defined and used in Chapter 519 of the Ohio Revised Code; provided however, that as used in this Resolution, agriculture shall not include: (1) the keeping, caring, and harboring of household pets, not exceeding a total of six (6) such pets; * * * .

{¶ 30}　Section 302.03 of the Resolution provides as follows:

**Permitted Accessory Uses.** The following uses shall be permitted as uses accessory to a principal permitted use existing upon the property, provided they meet the development standards set forth for this district and any supplementary regulations to such use in this zoning resolution.

A. Accessory buildings and structures in accordance with Article 5, Section 502.

* * *

{¶ 31} Section 1102.01 of the Resolution defines an "accessory use or structure" as "[a] use or structure incidental and subordinate to the principal use and/or structure on the lot and serving a purpose customarily incidental and subordinate to the use of the principal building."

{¶ 32} Section 302.04 of the Resolution lists 19 conditional uses that "shall be permitted only after approval by the Board of Zoning Appeals in accordance with Article 10, Section 1002," including, "K. Private cemetery as regulated in Article 5, Section 522." Section 1102.03(A) defines a cemetery as "Land used or intended to be used for the burial of animal or human dead and dedicated for cemetery purposes, including crematories, mausoleums and mortuaries if operated in connection with and within the boundaries of such cemetery." Section 512.03 of the Resolution provides that "[a]ny new cemetery shall be located on a site containing not less than forty (40) acres."

{¶ 33} It is undisputed that the "breeding, raising, and care of dogs constitutes [sic] animal husbandry, as that term is used in R.C. 519.01." *Board of Brimfield Township Trustees v. Bush*, 11th Dist. Portage No. 2005-P-0022, 2007-Ohio-4960, ¶ 30, quoting

*Harris v. Rootstown Twp. Zoning Bd. Appeals*, 44 Ohio St.2d 144, 338 N.E. 2d 763 (1975), paragraph one of the syllabus. We conclude, however, that the broad definition of agriculture set forth above does not include the operation of an animal crematorium such that it is a permitted principal use as the Artzs contend. We agree with the trial court's determination that *Angels for Animals* only addressed the use of a crematorium in an industrial district, and that since the Seventh District did not address whether or not the cremation of dead dogs was an agricultural use, the Artzs' reliance upon *Angels for Animals* is misplaced. We further note that *Angels for Animals* involved the operation of a non-profit animal shelter that "*had to* euthanize animals in the course of its business," such that "four to six hundred pounds of dead animals were taken from the shelter to a dump every week." *Id*., ¶ 3 (emphasis added). The Artzs operate a kennel to provide board and care for dogs in their owners' absence, not a rescue shelter or humane society, and the euthanasia of dogs is not performed in the course of the Artzs' business. We further conclude that operation of an animal crematory is not a necessary function or normal operation within the agricultural community consistent with the purpose of the district as set forth in Section 302.01 of the Resolution.

{¶ 34} We also cannot conclude that the operation of the crematory is a permitted accessory use "incidental" to the kennel as the Artzs assert. As noted above, the operation of a crematory is not "customarily incidental and subordinate to the use of the principal building," which is devoted to the temporary boarding of dogs.

{¶ 35} Finally, regarding conditional uses, we agree with the Artzs that their proposed animal crematorium does not fall within the meaning of a private cemetery as that

term is used in the Resolution; the definition of cemetery is focused on the intended use of land "for the burial of animal * * * dead," and Artz's testimony was clear that he did not intend to use his land for the burial of animal remains. We agree with Elizabeth Township, however, that the trial court did not find that the prospective use of the property is governed by Section 302.04(K), such that a conditional use permit is required. The trial court merely indicated that if "an animal crematory does not fall within the operation of a cemetery as defined under the resolution, then plaintiffs would not qualify for a conditional use permit and cannot operate the animal crematory." In other words, since the operation of an animal crematorium is not a permitted principal or accessory use, and it is not listed as a conditional use requiring approval from the Board of Zoning Appeals, the Artzs are not entitled to operate the crematorium.

{¶ 36} Since the trial court correctly dismissed count one of the Artzs' complaint, the Artzs' assigned errors are overruled, and the judgment of the trial court is affirmed

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Brian D. Huelsman
Joseph P. Moore
John E. Fulker
Hon. Christopher Gee